OAK HALL CAP AND GOWN COMPANY, INCORPORATED, Plaintiff-Appellee,

v.

OLD DOMINION FREIGHT LINE, IN-CORPORATED, Defendant-Appellant.

OAK HALL CAP AND GOWN COMPANY, INCORPORATED, Plaintiff-Appellant,

v.

OLD DOMINION FREIGHT LINE, INC., Defendant-Appellee.

Nos. 89-1514, 89-1524.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1990.

Decided March 26, 1990.

Hyman Hillenbrand, Kroll & Tract, New York City, for defendant-appellant.

James Wilson Jennings, Jr., Woods, Rogers & Hazlegrove, Roanoke, Va., for plaintiff-appellee.

John D. Eure, Ronald M. Ayers, Johnson, Ayers & Matthews, on brief, Roanoke, Va., for appellant.

Frank K. Friedman, Elizabeth K. Hillman, Woods, Rogers & Hazlegrove, on brief, Roanoke, Va., for plaintiff-appellee.

Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

JOSEPH H. YOUNG, Senior District Judge:

The plaintiff, Oak Hall Cap & Gown Co. ("Oak Hall"), and the defendant, Old Dominion Freight Line, Inc. ("Old Dominion"), have appealed orders of the magistrate entered at the conclusion of plaintiff's suit for damages. For the reasons stated below, we affirm the judgment of $87,869 in favor of Oak Hall, but vacate and remand the order denying its costs.

## I.

Oak Hall manufactures, sells, and rents academic, clerical, and judicial apparel, and primarily sells its gowns to manufacturer's representatives who, in turn, sell to high schools and colleges. In addition, Oak Hall makes about 15% of its sales directly to schools. When a subsidiary of Oak Hall ceased its operations in October 1987, it transferred its inventory to Oak Hall, who then engaged Old Dominion to transport the inventory, which included finished souvenir gowns, cut goods, and rolls of fabric, from New London, Ohio, to Oak Hall's plant in Salem, Virginia. En route to Salem, Old Dominion's driver parked his trailer for the Halloween weekend at a shopping mall near his home in Beckley, West Virginia. When the driver returned to the trailer on November 1, 1987, he discovered that vandals had started a small fire in the back of the trailer, charring the cut goods and destroying several rolls of fabric. However, the finished gowns, packed in plastic envelopes, were not burned but suffered smoke damage.

The next day, the Old Dominion driver delivered the goods to Old Dominion's terminal in North Carolina in accordance with instructions from his employer. Upon arrival, Ernest F. Benge, the Director of Claims for Old Dominion, examined the goods and contacted Air–Chem Professional Products of North Carolina ("Air–Chem") to treat the damaged merchandise. Air–Chem's odor removal treatment involves a "dry fog" chemical that bonds with the molecules that caused the smoke odor and removes them from the goods that have been smoke-damaged. Air–

Chem's first effort at cleaning the garments involved fumigating the trailer, without removing the goods from their plastic wrappers and box containers. When Old Dominion delivered the damaged goods to Oak Hall on November 19, 1987, Malcolm Rosenberg, Oak Hall's chairman and majority owner, and Howard Rogers, Oak Hall's warehouse manager, rejected the shipment because of a heavy smoke odor. However, according to Benge, both Rogers and Rosenberg told him to try and fix the garments because Oak Hall needed to know "by a given time" whether the goods could be repaired for the spring selling season. Rogers even wrote Benge two letters urging Old Dominion to proceed with its treatment efforts and expressing Oak Hall's "hope [that] this new procedure works."

Realizing that the goods were still damaged, Benge removed the gowns from their containers and used an ionization cleaning technique on a sample gown. Rogers rejected this sample as having a detectable odor. Benge then decided to use Air–Chem again and, over a period of the next several weeks, Air–Chem treated all the gowns and accessories individually. On December 30, 1987, Benge showed Oak Hall a sample of the newly treated gowns. Again, Rogers contended that the goods were not cured and retained a smoke odor. Benge disagreed and directed Air–Chem to complete its treatment of all the goods. On February 29, 1988, Old Dominion rejected Oak Hall's claim for damages because "[a]ll of this product has been treated by Air–Chem and the smoke odor successfully removed."[1]

Stuck with the gowns, Old Dominion attempted, unsuccessfully, to sell the garments. Oak Hall informed Old Dominion that it was willing to help the defendant sell the goods overseas, but Oak Hall never intended to sell the merchandise in its normal, domestic market. On March 30, 1988, Oak Hall brought suit against Old Dominion under the Carmack Amendment to the Interstate Commerce Act ("ICA"), 49 U.S.C. § 11707, alleging that the fire totally destroyed the goods and requesting $164,150 in damages (the full retail value of the gowns). At trial before the magistrate, Oak Hall presented evidence showing that the damaged gowns could not be resold either in the company's primary market or the secondary, "rental gown" market. Old Dominion presented evidence that the final treatment of the Oak Hall gowns removed any objectionable odor, and argued that Oak Hall's refusal to accept the merchandise was unlawful.

In its findings of fact and conclusions of law, the magistrate found that (1) Oak Hall established a prima facie case of liability under the ICA; (2) the goods were "worthless for their intended purpose"; (3) Oak Hall was entitled to recover from Old Dominion its replacement cost for the goods damaged in transit; and (4) Oak Hall was estopped from claiming the full replacement cost of the goods because of its "unconscionable" behavior in "permitting and even encouraging Old Dominion to sustain the costs" of a "hopelessly futile" renovation effort. Stating that the record was "not so well developed at the present time as to permit quantification of plaintiff's damages," the court held a separate trial on the issue of damages.[2] After hearing the additional evidence on damages, the court filed additional findings and entered judgment in favor of Oak Hall for $87,869,[3] with each side to bear its costs. Old Dominion appeals the ruling on the worthlessness of the goods and the ordering of a second trial on damages, and Oak Hall cross-appeals the finding that it improperly induced Old Dominion to cure the damaged goods and the ruling that replacement costs constituted the proper measure of

1. Benge later testified that Old Dominion spent about $14,000 in the attempt to treat Oak Hall's shipment.

2. The record was undeveloped in part because the court had sustained Oak Hall's objections to Old Dominion's questions concerning replacement costs.

3. The court arrived at this figure by adding the replacement cost of the gowns to the other damaged goods, which amounted to $101,542, and then subtracting the $13,673 that Old Dominion spent in attempting to cure.

damages. Finally, Oak Hall cross-appeals the denial of its costs.

## II.

■ In an action to recover from a carrier for damages to a shipment, the shipper establishes a prima facie case under the ICA when he shows "delivery [of the goods] in good condition, arrival in damaged condition, and the amount of damages." *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964); *see also Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 839 (8th Cir. 1988). The liability imposed on a common carrier is the "actual loss or injury to the property caused by [the responsible carrier]." 49 U.S.C.A. § 11707(a)(1) (West Supp.1989) (formerly codified at 49 U.S.C. § 20(11)). It is well established, however, that when damaged but salvageable goods are tendered to the owner, the carrier's liability for further damages terminates. *See S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir.1982); *Chicago & North Western R.R. Co. v. Union Packing Co.*, 514 F.2d 30, 34–35 (8th Cir.1975); *Fraser–Smith Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 435 F.2d 1396, 1399 (8th Cir.1971). Thus, when the damaged goods arrive at the shipper's destination, the consignee has a duty to accept them and mitigate damages unless the goods are deemed "totally worthless." *S.C. Johnson*, 695 F.2d at 258; *Chicago & North Western R.R. Co.*, 514 F.2d at 35; *Fraser–Smith*, 435 F.2d at 1399; *cf. Long Prairie Packing Co. v. Midwest Emery Freight System, Inc.*, 429 F.Supp. 201, 203 (D.Mass.1977) (duty to accept "predicated upon very practical considerations" that a consignee will often be in a much better position to dispose of damaged goods than the carrier, who is not in the business of selling).

Here, the magistrate found that the smoke damage had rendered the gowns "worthless for their intended purpose ... [and therefore Oak Hall had] no duty to mitigate." Old Dominion asserts three errors in this finding. First, it argues that the court erred as a matter of fact in finding the goods totally worthless. Second, Old Dominion contends that, having estopped Oak Hall from claiming the full replacement costs because of Oak Hall's misleading conduct, the magistrate should have estopped Oak Hall from denying the marketability of the goods. Finally, Old Dominion maintains that "worthless for their intended purpose" is, as a matter of law, not "totally worthless" as construed by *Fraser–Smith*. In making these errors, Old Dominion argues, the court failed to impose on Oak Hall its burden to accept the goods and mitigate damages.

## A.

■ Regarding Old Dominion's first contention, Rule 52(a), Fed.R.Civ.P., dictates that the court's factual finding of worthlessness cannot be set aside unless "clearly erroneous." Old Dominion cannot meet this standard. The only evidence concerning the marketability of the smoke damaged gowns came from Malcolm Rosenberg, Oak Hall's CEO. He testified that the goods "could never be sold in the very competitive souvenir apparel market because of exposure to smoke, unpackaging, and handling." Rosenberg further stated that there was no secondary market for such damaged goods. Old Dominion argues, however, that its evidence demonstrated that the goods were perfectly cleaned by Air–Chem. While it may well be true that Oak Hall irrationally refused to accept the treated gowns, the issue is the *marketability* of the gowns, and not whether they smelled nice. Had Old Dominion presented evidence of the gowns' marketability in a secondary market (which they belatedly did at the second trial),[4] the testimony of Rosenberg might have been successfully impeached. Having produced no evidence on the resale issue, we con-

---

**4.** At the second trial on damages, Old Dominion presented evidence on the resale possibilities of the gowns, but this testimony was untimely.

clude that Old Dominion has not carried its burden of showing clear error.

## B.

■ Old Dominion next asserts that because Oak Hall encouraged Old Dominion in its efforts to cure the goods in time for the spring selling season, it should have been estopped from contending that the goods could not be resold. The appellant argues that the court should have extended its application of the estoppel doctrine to cover the marketability issue. We disagree. In our view, the effect of Oak Hall's encouragement should not estop it from claiming that the goods were unsalvageable once the cleaning efforts had been completed. Oak Hall never promised Old Dominion that it would accept whatever cure or cleaning method was used; if it had, then it might be fair to estop Oak Hall and hold the plaintiff to its promise. Instead, Oak Hall stated only that it "hope[d that] this new procedure works." This does not constitute a promise or an admission that the garments would be resold, and so we decline to estop Oak Hall from denying marketability.

## C.

Similarly unavailing is Old Dominion's contention that "worthless for their intended purpose" is not equivalent to "totally worthless" as a matter of law. In light of the court's undisturbed factual finding that the gowns lacked more than scrap value, we conclude that "worthless for their intended purpose" is equivalent to totally worthless. *See Fraser–Smith,* 435 F.2d at 1399 (if goods are worth only salvage value, consignee need not accept and mitigate). In *Fraser–Smith,* moreover, the defendant-shipper presented evidence showing that a secondary market existed for the slightly damaged corn, and that the consignee never actually inspected the ship-

5. Old Dominion's contention that the gowns were not totally worthless after the treatment by Air–Chem does not change our conclusion. It is well settled that the value of the damaged goods is measured at the time of *original* tender. *Fraser–Smith,* 435 F.2d at 1400; *Bosung Industrial*

ment. *See* 435 F.2d at 1400–01. Thus, the Eighth Circuit's use of the term "totally worthless" can be taken to mean "goods with no secondary market." That is precisely what Oak Hall's evidence demonstrated.[5]

## III.

At the first trial, Oak Hall argued that the proper measure of its damages was the figure it referred to as the "salesman's net"[6] less the salvage value of the goods. During the trial, the magistrate sustained Oak Hall's objections to Old Dominion's questions concerning Oak Hall's actual replacement costs. In its findings, however, the court found that the gowns were designated for inventory and were not identified to a contract for sale, and so the replacement costs constituted the proper measure of damages. Because it had sustained objections to the questions concerning this information, the court ordered a separate trial on damages.

■ Old Dominion maintains that the court abused its discretion in ordering this separate trial. It argues that because Oak Hall was unprepared to prove replacement costs, the second hearing provided an advantage for Oak Hall and unduly prejudiced Old Dominion. There is no merit to this position. It is well within the discretion of the trial court to correct any errors or gaps in the record by hearing additional evidence, and we see no abuse of that discretion.

## IV.

■ On cross-appeal, Oak Hall argues that the court's application of the estoppel doctrine to preclude it from arguing for the full value of the gowns was clearly erroneous. Oak Hall asserts that its encouragement of Old Dominion's cleanup efforts was motivated by an unsuccessful attempt

*Co. v. M.V. Aegis Sonic Inc.,* 590 F.Supp. 908, 913–14 (S.D.N.Y.1984).

6. This figure is the price Oak Hall would have charged to its manufacturer's representatives for the goods.

to assist Old Dominion in seeking an overseas buyer. The record indicates otherwise. Old Dominion submitted both live testimony and documentary evidence showing that Oak Hall encouraged the cleanup because it needed to know soon whether the goods could be used in the upcoming spring season. Moreover, Old Dominion acted in reliance upon these representations, and to its financial detriment. We have previously recognized, in accordance with many state courts, that a party which relies to its detriment on a breached promise may receive a setoff in damages equal to the amount expended in reliance, *see Allen M. Campbell Co. v. Virginia Metal Indus.*, 708 F.2d 930, 931 (4th Cir.1983), and we conclude that such reliance was present here.

## V.

■ Oak Hall next takes issue with the court's measure of damages. Under 49 U.S.C. § 11707(a)(1), Old Dominion is liable to Oak Hall for "the actual loss or injury to the property," and Oak Hall argues that actual loss equals the "salesman's net" figure, as opposed to the replacement costs. The general rule for determining the amount of damages under this section is "the difference between the market value of the property in the condition in which it should have arrived ... and its market value in the condition it did arrive." *Contempo Metal Furniture Co. of Calif. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir.1981); *see also Gulf, Colorado & Santa Fe Railway v. Texas Packing Co.*, 244 U.S. 31, 37, 37 S.Ct. 487, 489, 61 L.Ed. 970 (1917). If one applied the general rule in this case, the measure of damages would be the salesman's net figure, *i.e.*, the value the goods would have brought to Oak Hall had Old Dominion delivered the shipment without damage. *See Polaroid Corp. v. Schuster's Express, Inc.*, 484 F.2d 349, 351 (1st Cir.1973).

■ "The general rule of market value less salvage, however, is not always the best measure of actual loss." *Brockway–Smith Co. v. Boston & Maine Corp.*, 497 F.Supp. 814, 820 (D.Mass.1980) (fixing damages at replacement costs). Here, the evidence before the magistrate demonstrated that Oak Hall secured substitute goods after the accident, lost no sales, and had no opportunity for a sale with these damaged goods. To fix damages at the salesman's net figure, therefore, would credit Oak Hall with more than its "actual loss." "[H]aving sustained no ultimate loss on the transaction with its customer, [Oak Hall's] actual loss was obviously the cost of replacing the damaged merchandise...." *Meletio Sea Food Co. v. Gordons Transports*, 191 S.W.2d 983, 986 (Mo.App.1946). Consequently, we conclude that the magistrate properly computed the damages using the replacement cost figure.

## VI.

■ Oak Hall's final cross-appeal issue concerns the magistrate's denial of costs. In his opinion, the magistrate stated no reasons supporting his denial. Oak Hall argues that, as the prevailing party, it was entitled to such costs, or at least to a reason behind the denial. Under Rule 54(d), Fed.R.Civ.P., the award of costs to the prevailing party is a matter firmly in the discretion of the trial court. However, we have previously declared that district courts may not depart from the "normal practice" of awarding fees to the prevailing party without first articulating some good reason for doing so. *Constantino v. American S/T Achilles*, 580 F.2d 121, 123 (4th Cir.1978); *see also Trans–Container Servs. v. Security Forwarders, Inc.*, 752 F.2d 483, 488 (9th Cir.1985) (order denying prevailing party costs cannot stand without statement of reasons). Without intimating any view as to whether Oak Hall should ultimately recover costs, we remand this issue to the magistrate for an explanation of the denial.

## VII.

For the reasons stated herein, we

AFFIRM IN PART, AND VACATE AND REMAND IN PART.