Michael A. WARD; Kimberly Ward, Plaintiffs–Appellees,

v.

ALLIED VAN LINES, INCORPORATED, a Delaware corporation; Academy, Incorporated, d/b/a Academy Moving & Storage, d/b/a Academy/Allied Moving & Storage, a California Corporation; J.D. Carton & Son, Incorporated, a New Jersey corporation; Samuel Smith, Defendants–Appellants,

and

Norfolk Southern Railway Company, Defendant.

Michael A. Ward; Kimberly Ward, Plaintiffs–Appellees,

v.

Allied Van Lines, Incorporated, a Delaware corporation; Academy, Incorporated, d/b/a Academy Moving & Storage, d/b/a Academy/Allied Moving & Storage, a California Corporation; J.D. Carton & Son, Incorporated, a New Jersey corporation; Samuel Smith, Defendants–Appellants,

and

Norfolk Southern Railway Company, Defendant.

Nos. 99–1338, 99–1746.

United States Court of Appeals, Fourth Circuit.

Argued: April 7, 2000

Decided: Nov. 2, 2000

**ARGUED:** Gregory Charles York, Morris, York, Williams, Surles & Barringer, L.L.P., Charlotte, North Carolina, for Appellants. Barry Sidney Cobb, Yates, McLamb & Weyher, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Anna L. Baird, Morris, York, Williams, Surles & Barringer, L.L.P., Charlotte, North Carolina, for Appellants. R. Scott Brown, Yates, McLamb & Weyher, L.L.P., Raleigh, North Carolina, for Appellees.

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge MICHAEL wrote the opinion, in which Judge WILLIAMS and Judge KING joined.

## OPINION

MICHAEL, Circuit Judge:

This case arises under a federal statute, known as the Carmack Amendment, which makes motor carriers liable as virtual insurers for loss or damage to the goods they transport. *See* 49 U.S.C. § 14706(a)(1) (1997) (amending and recodifying 49 U.S.C. § 11707(a)(1) (1994)). A Norfolk Southern Railway Company (Norfolk Southern) train hit and wrecked a moving van carrying the household goods of Michael and Kimberly Ward. To recover for their damages, the Wards sued Allied Van Lines, Inc. and several of its agents (the Allied defendants or Allied), asserting claims under the Carmack Amendment and other theories. The Wards also sued Norfolk Southern for negligence. The Wards settled with the railroad before trial and obtained a jury verdict for money damages on their Carmack Amendment claim against the Allied defendants. The first issue on appeal is whether the Allied defendants are entitled to a set-off for the pretrial settlement the railroad paid to the Wards. We hold that a setoff is required, and we reverse the district court on that point. On the second issue, relating to attorneys' fees, we affirm the award of fees to the Wards.

I.

Michael Ward worked for Mitsubishi Electronics America in Morristown, New Jersey. In September 1994 the company transferred Ward, as part of a job promotion, to its facility in Cary, North Carolina. Mitsubishi had a standing contract with Allied under which Allied packed and moved the household property of Mitsubishi employees who were transferred to new locations. An Allied moving van arrived at the Wards' New Jersey residence on September 16, 1994, and the carrier completed packing and loading in a couple of days. The loaded van never made it to the Wards' new house, however. In the early evening of September 22, 1994, the moving van got stuck on a railroad cross-

ing in Morrisville, North Carolina, within a few miles of its destination. While the van was stuck, a Norfolk Southern train rammed into its side, demolishing it and destroying or damaging almost all of the Wards' household property.

The Wards filed a claim with Allied for their loss, but the matter could not be resolved. The Wards then sued the Allied defendants and Norfolk Southern, asserting a variety of state law and Carmack Amendment claims against the Allied defendants and a negligence claim against Norfolk Southern. When the dust settled after dispositive motions, two claims remained: the Carmack Amendment claim against the Allied defendants and the negligence claim against the railroad. The Wards settled their claim against Norfolk Southern for $40,000 shortly before trial.

At trial on the Carmack Amendment claim against the Allied defendants, the Wards sought $314,000 in damages. The jury returned a $207,000 verdict in favor of the Wards. The district court entered judgment for the Wards in the amount of $187,000, after applying a credit for a $20,000 advance Allied had made to them shortly after the accident. The district court denied the Allied defendants' motion for an additional setoff of $40,000, representing the settlement paid by Norfolk Southern to the Wards. Finally, the district court awarded the Wards costs of $3,104.08, attorneys' fees of $40,987, and prejudgment interest on the $187,000 damage award. The Allied defendants appeal the district court's orders denying the $40,000 setoff and granting the Wards attorneys' fees.

## II.

The Allied defendants first argue that the district court erred in denying them a setoff or credit for the $40,000 settlement payment that Norfolk Southern made to the Wards prior to trial. This issue presents a question of law that we review de novo. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 329 (4th Cir.1998).

█ The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887. *See* Act of June 29, 1906, ch. 3591, 34 Stat. 584. The Amendment makes a carrier liable "for the actual loss or injury to the property" it transports. 49 U.S.C. § 14706(a)(1) (1997).[1] Congress enacted the Carmack Amendment "to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993). The Carmack Amendment preempts a shipper's state and common law claims against a carrier for loss or damage to goods during shipment. *See id.* at 705.

█ The setoff issue before us today cannot be decided by looking at the text of the Carmack Amendment. Federal case law does not provide the answer either. Nevertheless, the following two Carmack Amendment cases discussing setoff are worth mentioning, even though they do not control our decision. In the first case, *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291 (4th Cir. 1990), our court allowed a setoff against a Carmack Amendment award, but the facts are distinguishable. In *Oak Hall* a shipment of academic gowns was damaged by smoke when vandals set a fire in the back of the carrier's parked semitrailer. The shipper, a gown company, immediately pressed the carrier "to try and fix the garments" by having them cleaned. *Id.* at 293. When the cleaning was finished, the gown company maintained that the gowns still smelled of smoke, and it sued the

---

1. At the time of the accident in this case, the Carmack Amendment was codified at 49 U.S.C. § 11707(a)(1) (1994). Thereafter, the Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803, 907–08, amended and recodified the Carmack Amendment at 49 U.S.C. § 14706(a)(1). The language imposing carrier liability was not changed.

carrier under the Carmack Amendment for the value of the goods. After a bench trial the district court awarded the gown company damages equal to the replacement cost of the gowns, less a setoff for the amount spent by the carrier in attempting to clean them. We affirmed the setoff because the carrier, to its financial detriment, had relied on the gown company's representation that the carrier should promptly pursue the cleaning option because the gown company "needed to know soon" whether the gowns would be marketable in the upcoming spring season. *Id.* at 296 (applying the principle that "a party which relies to its detriment on a [representation] may receive a setoff in damages equal to the amount expended in reliance"). *Oak Hall* thus allowed the carrier to receive a setoff, but the reliance theory upon which the setoff was based is not applicable here.

The Wards cite a second Carmack Amendment case, *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir. 1978), in support of the district court's decision to deny the Allied defendants' motion for a setoff. In *Anton* the U.S. Air Force engaged a carrier to move the household belongings of a colonel who was retiring. The goods were damaged by fire while in transit, and the Air Force paid the colonel $10,000 under a federal law that allowed a military department to pay an employee up to $10,000 for damage to or loss of personal property incident to her service. The colonel, in turn, assigned to the government $10,000 of her claim against the carrier. The colonel then sued the carrier under the Carmack Amendment, and the jury awarded her $13,405.09 in damages. The carrier moved to reduce the judgment by $10,000, the amount the Air Force had paid the colonel for her loss. The district court denied the setoff, and the First Circuit affirmed by applying the "collateral source rule." The rule is this: when the victim of a tort receives payment for his injuries from a collateral source, that is, a source independent of the tortfeasor, the payment should not be deducted from the damages owed by the tortfeasor. "Insurance proceeds are the most common collateral source." *Black's Law Dictionary* 256–57 (7th ed.1999). The *Anton* court reasoned that the Air Force's payment under the statute was comparable to an insurance benefit because the colonel, as claimant, was not required to prove wrongdoing or negligence, only loss. The court then held that the collateral source rule prevented the carrier from reducing its liability by deducting what was, in effect, an insurance payment to the victim. *See Anton*, 591 F.2d at 110. The colonel was, of course, contractually obligated to apply a part of her recovery to reimburse the Air Force. The question is whether *Anton* supports the Wards' argument that the Allied defendants are not entitled to receive a setoff for the money Norfolk Southern paid to the Wards. *Anton* does not help the Wards because the railroad's $40,000 payment to them was not akin to an insurance benefit. Rather, the payment was in settlement of the Wards' negligence claim against the railroad. Norfolk Southern was not a collateral source; it was a tortfeasor.

Thus, there is no answer in the statute or federal case law, and we must look elsewhere. Because the Carmack Amendment "essentially adopts the common law of carriers," *Millers Mut. Ins. Ass'n v. Southern Ry. Corp.*, 483 F.2d 1044, 1048 (4th Cir.1973), we may draw upon principles of common law in arriving at our decision. *See Hector Martinez & Co. v. Southern Pac. Transp. Co.*, 606 F.2d 106, 108 & n. 1 (5th Cir.1979). At common law a carrier was liable for more than its negligent acts; it essentially acted as an insurer of the goods it transported. The Carmack Amendment "codifie[d] the common–law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the

goods." *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 132 n. 2 (4th Cir.1967) (quoting *Missouri Pac. R.R. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964)) (internal quotation marks omitted). Because carriers acted as virtual insurers at common law, their liability was broad.

■ The common law also recognizes the right of an insurer to be subrogated to any cause of action that its insured has against a third party with respect to a covered loss. "As a general rule, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, that is, any person whose negligent or other tortious conduct caused the loss." *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 598 (4th Cir.1985) (citation omitted), *amended on denial of reh'g en banc,* 788 F.2d 1042 (4th Cir.1986). The subrogation right "may be either the right of conventional subrogation—that is, subrogation by agreement between the insurer and the insured—or the right of equitable subrogation, by operation of law, upon the payment of the loss." *Milwaukee Ins. Co. v. McLean Trucking Co.,* 256 N.C. 721, 125 S.E.2d 25, 29 (1962). The two forms of subrogation are equally effective. *See Duboise v. State Farm Mut. Auto. Ins. Co.,* 96 Nev. 877, 619 P.2d 1223, 1224 (1980); *E.J. Shambley v. Jobe–Blackley Plumbing & Heating Co.,* 264 N.C. 456, 142 S.E.2d 18, 20 (1965); 16 Couch on Ins. §§ 61:2, 61:29 (2d rev. ed.1983). Under a related right an insurer who pays a property insurance claim may, in the proper circumstances, seek reimbursement from its insured when the insured settles with or releases a third party responsible for the loss. *See* 16 Couch on Ins. § 60:41. When the insurance contract does not provide for reimbursement, the right may be sustained "upon the theory that the law will create an implication of a promise to repay an amount paid as indemnity for damages suffered, when the party, who caused such damages, has also made good the damages to the injured party." *Hamilton Fire Ins. Co. v. Greger,* 246 N.Y. 162, 158 N.E. 60, 61 (1927). *See also Continental Ins. Co. v. Connecticut Natural Gas Corp.,* 5 Conn.App. 53, 497 A.2d 54, 59 (1985); *General Exch. Ins. Corp. v. Driscoll,* 315 Mass. 360, 52 N.E.2d 970, 973 (1944); 16 Couch on Ins. § 60:41.

The related rights of subrogation and reimbursement serve to protect the insurer. They prevent the insured from receiving or retaining a double recovery (from both his insurer and the wrongdoer) for a single harm. *See Shipley v. Northwestern Mut. Ins. Co.,* 244 Ark. 1159, 428 S.W.2d 268, 270 (1968); *Marquez v. Prudential Property & Cas. Ins. Co.,* 620 P.2d 29, 33 (Colo.1980); *Standard Accident Ins. Co. v. Pellecchia,* 15 N.J. 162, 104 A.2d 288, 292 (1954); 16 Couch on Ins. § 61:18. These rights are rooted in equity and allow for an adjustment among the parties so that a loss is paid by the party who should bear the responsibility. *See Skauge v. Mountain States Tel. & Tel. Co.,* 172 Mont. 521, 565 P.2d 628, 630 (1977); *Lawyers' Title Guar. Fund v. Sanders,* 571 P.2d 454, 456 (Okla.1977); 16 Couch on Ins. § 61:18.

■ This background provides the basis for a decision on the setoff question. As we said, the Carmack Amendment codifies the common law rule that carriers are essentially insurers of the goods they transport. Because the Carmack Amendment treats carriers as insurers, we conclude that carriers should have the benefit of the rights of subrogation and reimbursement that apply to insurers at common law. In the present case the jury found that the Wards' total loss was $207,-000. The Wards have already received $40,000 from Norfolk Southern for its wrongdoing in causing that loss. If the Allied defendants are required as virtual insurers to pay the Wards the full $207,-000, those defendants would be forced to shoulder Norfolk Southern's portion of the

responsibility ($40,000), and the Wards would receive a double recovery in that amount. To prevent that, the Allied defendants must be allowed a setoff in the sum of $40,000, subject to one adjustment. The setoff should be reduced by the amount of fees and expenses reasonably incurred by the Wards in reaching the settlement with Norfolk Southern.

### III.

■ The Allied defendants also challenge the district court's award of $40,987 in attorneys' fees to the Wards. We review a fee award under an abuse of discretion standard. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir.1998).

■ The Allied defendants first assert that the Wards did not meet the statutory prerequisites for an award of fees in a Carmack Amendment case. As a preliminary matter, we must decide whether the old fee provision, 49 U.S.C. § 11711 (1994), or the new one, 49 U.S.C. § 14708 (1997), applies. All parties agree that the old version of the attorneys' fees statute applies in this case, and we reach the same conclusion. We would create a retroactivity problem for the Allied defendants if we applied the new version in this case.

The Wards tendered their household goods to Allied in September 1994, and the new provision governing attorneys' fees was not enacted until December 29, 1995. The new fee provision is linked to a revised scheme for the resolution of claims for loss or damage in the cartage of household goods. A carrier of household goods is now required to offer neutral arbitration as a means of settling these disputes, and the carrier must give the shipper notice of the availability of arbitration "before such goods are tendered to the carrier for transportation." 49 U.S.C. § 14708(b)(2).[2] If a claim for damaged or lost goods is arbitrated to a timely, but non-binding,

conclusion, the shipper cannot recover attorneys' fees in a subsequent court action against the carrier. *See id.* § 14708(d). The question is whether the new statute can be applied to award fees to the Wards because Allied did not make arbitration, or notice of it, available to the Wards, even though an arbitration program was not required when the goods were transported. The answer is so obvious that we can run through the retroactivity analysis rather quickly.

First of all, Congress has not expressly required that the new attorneys' fees provision be given retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Tasios v. Reno*, 204 F.3d 544, 547 (4th Cir.2000). The act that revised the fee provision, the Interstate Commerce Commission Termination Act, does include a savings clause, which says that the "Act ... shall not affect suits commenced before the date of the enactment of this Act [Dec. 29, 1995]." 49 U.S.C. § 701 note. This clause, however, does not address the situation in this case: suit was commenced after the date of enactment, and attorneys' fees are being sought in part because of Allied's conduct prior to enactment. Because Congress did not say whether the new fee provision reaches back to cover this situation, we determine whether the application of the statute to the conduct at issue would result in "retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective." *Martin v. Hadix*, 527 U.S. 343, 357, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). Applying the new provision would have a retroactive effect because it would "impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. The new provision, if applied, would impose on Allied the new duties of offering neutral arbitration and pre-shipment notice of its availability with respect

---

**2.** The old statute simply encouraged carriers of households goods to "establish a program to settle disputes between such carriers and shippers" of those goods. 49 U.S.C. § 11711(a)(1).

to the already completed transaction of transporting the Wards' belongings in 1994. It would be especially unfair to penalize Allied for failing to notify the Wards about an arbitration program that was not yet required. In this circumstance, we must apply the presumption against statutory retroactivity. *See Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483. Accordingly, the old attorneys' fees provision (the one in effect at the time of the accident), 49 U.S.C. § 11711, governs the fee application in this case.

 We turn to whether the Wards are entitled to attorneys' fees under § 11711(d), which imposed three requirements on shippers:

> In any court action to resolve a dispute between a shipper of household goods and a motor common carrier ... concerning the transportation of household goods by such carrier, the shipper shall be awarded reasonable attorneys' fees if—(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later; (2) the shipper prevails in such court action; and (3)(A) no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute. . . .

Section 11711(d)(3) must be read in conjunction with § 11711(b)(2), which required a carrier to give the shipper "notice of the availability of [any dispute settlement] program ... before [household] goods are tendered to the carrier for transportation."

The Allied defendants concede that the Wards met the first two requirements under § 11711(d) for an award of fees: they filed a timely claim with Allied, and they prevailed in court on their Carmack Amendment claim. The Allied defendants argue, however, that the Wards fail to meet requirement three because the carrier had a dispute settlement program "available for use" by the Wards. The district court disagreed. The court found that Allied did not give the Wards notice of

the settlement program. Because the Wards were not given notice, the district court held that no dispute settlement program was available to the Wards, and § 11711(d)(3) was satisfied. We agree with the district court. Allied was obligated to give the Wards notice of the availability of the settlement program, and their lack of knowledge rendered the program unavailable to them. *See Drucker v. O'Brien's Moving & Storage Inc.,* 963 F.2d 1171, 1174 (9th Cir.1992); *Rini v. United Van Lines, Inc.,* 903 F.Supp. 234, 236–37 (D.Mass.1995). Because they satisfied all three requirements of § 11711(d), the Wards were eligible for attorneys' fees.

 The Allied defendants argue finally that the district court abused its discretion by awarding attorneys' fees without making sufficient findings as to the reasonableness of the award. In addition, although the Allied defendants concede that the Wards' fee request was based on reasonable hourly rates, they argue that the fee award was nevertheless unreasonable. Specifically, the Allied defendants claim that (1) the Wards' fee application included time spent on claims that did not go to trial, (2) the application included time spent on the claim against Norfolk Southern, and (3) the Wards did not prevail completely at trial because they sought $314,000 but were only awarded $207,000. The district court's order indicates that it considered and rejected each of the specific arguments raised by the Allied defendants. Moreover, the court said that a review of the Wards' fee application revealed that it was "reasonable within the bounds laid out by" *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640 (4th Cir.1998) (listing the twelve factors for evaluating applications for attorneys' fees that we adopted in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978)). The district court considered all of the relevant factors, even though it did not address each one of them in its order. And, as we just said, the court considered each objection that the Allied defendants made to the

fee application. The court's order is sufficiently detailed for us to review it, and we conclude that the court adequately scrutinized the fee application and the objections to it. The district court did not abuse its discretion in awarding attorneys' fees of $40,987 to the Wards.

## IV.

For the foregoing reasons, we reverse the district court's order denying the Allied defendants a setoff for the pretrial settlement paid by Norfolk Southern to the Wards, and we affirm the order awarding attorneys' fees to the Wards. The case is remanded for application of the setoff in accordance with part II of this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*