# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDWARD CAMPBELL, Husband;
SUSAN CAMPBELL, Wife,
              *Plaintiffs-Appellees,*

              v.

ALLIED VAN LINES INC.; GATES
MOVING & STORAGE INC.; KACHINA
MOVING & STORAGE, INC., an
Arizona corporation; MAYFLOWER
TRANSIT, INC., an Indiana
corporation,
              *Defendants-Appellants.*

No. 04-15969

D.C. No.
CV-01-00139-WWE

OPINION

Appeal from the United States District Court
for the District of Arizona
Warren W. Eginton, District Judge, Presiding

Argued and Submitted
April 13, 2005—San Francisco, California

Filed June 7, 2005

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Beezer;
Dissent by Judge O'Scannlain

## COUNSEL

Daryl Manhart, Burch & Cracchiolo, P.A., Phoenix, Arizona, for the defendants-appellants.

Gregory E. Good, Good & Associates, P.C., Tucson, Arizona, for the plaintiffs-appellees.

_____

**OPINION**

BEEZER, Circuit Judge:

This appeal involves the awarding of attorney's fees to shippers who successfully sue carriers of household goods under the Carmack Amendment. The appellants in this case are moving companies. They assert that there is no statutory basis to support the district court's award of an attorney's fee to shippers who brought a court action without first engaging in available arbitration. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

**I**

The relevant facts are not in dispute. Plaintiffs Edward and Susan Campbell contracted with defendants Kachina Moving and Storage, Inc., Mayflower Transit, Inc., Gates Moving and Storage, Inc. and Allied Van Lines, Inc. (collectively "carriers") to transport their household goods from Arizona to Florida. The goods were damaged during the move. The plaintiffs sued the carriers in state court, and the defendants removed the suit on the basis of federal question jurisdiction arising under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. *See* 28 U.S.C. §§ 1337, 1445(b). A jury in the district court found in favor of the plaintiffs, awarding over $15,000 in compensatory and $31,000 in emotional distress damages.

The district court granted the plaintiffs' motion for an attorney's fee of approximately $15,400 (one-third of the total award), plus costs. The only issue appealed is the plaintiffs' statutory entitlement to that fee.[1] We review this question de

_____

[1]Neither party questions the general "American rule," which dictates that, "absent explicit congressional authorization," the prevailing party in

novo. *Baffert v. Cal. Horse Racing Bd.,* 332 F.3d 613, 617 (9th Cir. 2003).

## II

**[1]** The Carmack Amendment to the Interstate Commerce Act establishes motor carrier liability for "the actual loss or injury to the property" a carrier transports. 49 U.S.C. § 14706(a)(1); *see Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000). The Carmack Amendment preempts many state and common law claims against carriers in an effort to create a "national scheme of carrier liability for goods damaged or lost during interstate shipment." *Ward,* 231 F.3d at 138 (internal quotation marks omitted); *see Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992).

**[2]** We are required to consider 49 U.S.C. § 14708, which in part states (emphasis added):

> (a) Offering shippers arbitration.—[A] carrier providing transportation of household goods . . . must agree to offer in accordance with this section to shippers of household goods arbitration as a means of settling disputes between such carriers and shippers . . . .

> (b) Arbitration requirements.—

> (6) Requests.—The carrier must not require the shipper to agree to utilize arbitration prior to the time that a dispute arises. . . .

a court action ordinarily is not entitled to an attorney's fee award to be paid by the losing party. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814-15 (1994) (internal quotation marks omitted).

(8) Deadline for decision.—The arbitrator must, as expeditiously as possible but at least within 60 days of receipt of written notification of the dispute, render a decision based on the information gathered [with exceptions] . . . .

(d) *Attorney's fees to shippers.*—In any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service . . . the shipper shall be awarded reasonable attorney's fees if—

(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;

(2) the shipper prevails in such court action; and

(3)(A) *a decision resolving the dispute was not rendered through arbitration under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection*; or

(B) the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period for performance under such decision has elapsed.

The parties' dispute centers on the meaning of the attorney's fee provisions in subsection (d). The carriers assert that these provisions presume participation in the arbitration program described in the rest of Section 14708. The shippers argue that the statute contains no such limitation. We agree with the shippers.

## III

[3] Our analysis begins, as it must, with the text of the statute in question. *Azarte v. Ashcroft*, 394 F.3d 1278, 1285 (9th

Cir. 2005). Under the "plain meaning" rule, "[w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Carson Harbor Vill., Ltd. v. Unocal Corp.,* 270 F.3d 863, 878 (9th Cir. 2001) (en banc) (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).

**[4]** This principal rule of statutory construction guides our examination of Section 14708's attorney's fee provisions. It also leads to our ultimate conclusion: simply put, nothing in § 14708(d) limits attorney's fees to shippers who engage in arbitration. The subsection applies to "any court action" involving disputes between a shipper of household goods and a carrier, and entitles shippers to attorney's fees if they meet the first two requirements of (d)(1) and (d)(2) (timely submitting a claim and prevailing in court), and are not barred by (d)(3)—which merely excludes those claims in which a timely arbitration decision is reached and does not necessitate court enforcement. In other words, (d)(3) prevents shippers from receiving attorney's fees if the arbitration program "works" as intended by swiftly resolving the dispute. It has no effect on shippers, such as the Campbells, who did not engage in arbitration.

We are mindful of the need to construe a statute as a whole. *See Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999). Like the carriers, we read the attorney's fee provisions in light of the arbitration program with which they share Section 14708. Our interpretation recognizes that receiving a timely arbitration decision affects a shipper's eligibility for an attorney's fee under (d)(3), and that courts must consult the time period in (b)(8) to establish whether an arbitration decision qualifies as timely. With this understanding in mind, we see no tension between our interpretation of the attorney's fee provisions and the arbitration program.

**[5]** The carriers read the interplay of (b)(8) and (d)(3)(A) differently. They argue that refusal to invoke arbitration pre-

vents (b)(8)'s time period from beginning to run, and therefore precludes (d)(3)(A) from ever being satisfied. But nothing in the text of (d)(3)(A) conditions eligibility upon the happening of a certain event; rather, a shipper satisfies (d)(3)(A) as long as a specific event does *not* occur, namely the rendering of an arbitration decision within a certain period of time. Because there was no arbitration decision in the Campbells' dispute, (d)(3)(A) poses no barrier to the award of an attorney's fee.

The reliance of other courts on Section 14708's title to support an alternative interpretation does not convince us otherwise. *See Yakuba v. Atlas Van Lines*, 351 F.Supp.2d 482, 490-91 (W.D. Va. 2004) (citing *Collins Moving & Storage Corp. v. Kirkell*, 867 So.2d 1179, 1183-84 (Fla. Ct. App. 2004)). Section 14708 may be entitled "Dispute settlement program for household goods carriers," but that does not give us free rein to ignore the plain language of subsection (d). As the Supreme Court explained in *Brotherhood of Railroad Trainmen v. B & O Railroad Co.*, 331 U.S. 519, 528-29 (1947) (internal citations omitted):

> That the heading of [a section] fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. . . . [T]he title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretive purposes, they are of use only when it sheds light on some ambiguous word or phrase.

*Accord INS v. St. Cyr*, 533 U.S. 289, 308-309 (2001) (quoting *Trainmen*). There is nothing ambiguous about the text in question here. Section 14708(d) is entitled "Attorney's Fees to shippers" and expressly applies to "any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service . . . ." It does not state that the subsection applies only to court actions pursued after first invoking arbitration; adding such a limitation may

be easy enough, but that is the province of Congress, not this court.

The carriers, however, argue that our straightforward reading of the text fails to properly respect Congress's intent to encourage arbitration. As a remedy, the carriers urge supplementing the statute's three enumerated conditions for attorney's fee eligibility by reading in a fourth, unstated prerequisite that shippers first invoke arbitration. "We have long held that there is a strong presumption that the plain language of [a] statute expresses congressional intent, rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed." *United States v. Tobeler*, 311 F.3d 1201, 1203 (9th Cir. 2002) (internal citation and quotation marks omitted). Section 14708(d) does not present such an exceptional circumstance. Given the ease with which Congress expressly listed three eligibility criteria, we see no reason why Congress would bury a fourth implicitly within the statute. We decline to add a condition that is conspicuously absent from the text when we perceive no inconsistency in the statute as it is written.

**[6]** We are particularly hesitant to depart from the statute's text in situations like the one here, in which we can only attempt to glean the specific details of Congress's intent by examining the limited legislative history of the act in question. The parties can—and do—argue about the proper object of this legislation and the effect of a rule that allows shippers to bypass arbitration without compromising their ability to receive attorney's fees. Perhaps, as the carriers argue, a rule that obligated shippers to submit to arbitration in order to recover attorney's fees would more effectively reduce the number of shipper-carrier lawsuits; then again, perhaps requiring carriers to agree to binding arbitration of all claims over $5,000 would do so as well. *See* 49 U.S.C. § 14708(b)(6).[2]

---

[2]49 U.S.C. § 14708(b)(6) states, in relevant part (emphasis added): "If the dispute involves a claim for more than $5,000 and the shipper requests

Such speculation is beside the point. We are not prepared to second-guess Congress's chosen method for adopting a legislative program that may or may not provide the best means to effectuate some underlying congressional goal. Lacking overwhelming evidence to suggest that the statute's language is at odds with a clearly expressed legislative intent to the contrary, we defer to the plain meaning of the text actually adopted by Congress. *See Tobeler,* 311 F.3d at 1203.

## IV

"[T]ime and again," the Supreme Court has instructed that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotation marks and citations omitted). Such is the occasion here. Congress unambiguously authorized the awarding of attorney's fees to shippers of household goods who meet three express conditions. None of those conditions require a shipper to first invoke arbitration. We decline the carriers' invitation to extract an implicit fourth requirement by delving further into this statute's inconclusive legislative history.

**[7]** There is no dispute that the Campbells (1) timely submitted a claim for the loss of their household goods, (2) prevailed in a court action to resolve this dispute, and (3) had no arbitration decision rendered in this dispute. The text of 49 U.S.C. § 14708(d) requires nothing more for awarding an attorney's fee.

AFFIRMED.

---

arbitration, such arbitration shall be binding on the parties *only if the carrier agrees to arbitration*."

The meaning of this provision is not before us, and we express no opinion as to it. We cite it only to question the carriers' assertion that Section 14708 as a whole plainly demonstrates a legislative intent to encourage arbitration above other considerations.

O'SCANNLAIN, Circuit Judge, dissenting:

This exercise in statutory interpretation forces us to confront the fact that the most literal interpretation of a phrase is not always the most natural and reasonable one. For that reason, I cannot agree with the majority's interpretation of 49 U.S.C. § 14708(d).

That subsection awards attorney fees to a shipper prevailing in a lawsuit against a carrier only if

> (A)  a decision resolving the dispute was not rendered through arbitration under this section within the period provided . . . or

> (B)  the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period for performance under such decision has elapsed.

49 U.S.C. § 14708(d)(3)(A)-(B). On the majority's reading, § 14708(d)(3)(A) applies even when no arbitration occurs at all because the shipper elects to head straight into court. In its insistence that this reading of § 14708(d)(3)(A) is not only preferable but unambiguously correct, the majority adheres to a decontextualized literalism that even the staunchest defenders of textualism eschew. *See* Antonin Scalia, A Matter of Interpretation 24 (1997) ("[T]he good textualist is not a literalist . . . ."); *Smith v. United States*, 508 U.S. 223, 242 (1993) (Scalia, J., dissenting) ("When someone asks, 'Do you use a cane?,' he is not inquiring whether you have your grandfather's silver-handled walking stick on display in the hall.").

I do not deny that it is possible to read the words of subsection (A) as the majority does, but our task is to find the most ordinary, natural, and reasonable interpretation of the provision's language. *See Bailey*, 516 U.S. at 145. The provision appears in the midst of a statute designed to promote and to

facilitate arbitration of claims under the Carmack Amendment. Yet the majority's interpretation of the attorney-fee provision turns it into a powerful incentive for shippers *not* to pursue arbitration. A shipper who takes his claim straight to court and wins has his legal costs paid by the carrier, while a shipper who submits the claim for arbitration must pay not only his own legal fees but part of the cost of the arbitration as well. *See* 49 U.S.C. § 14708(b)(5).

Only an unnatural literalism permits the majority to conclude that the statute's text compels this counterintuitive result. Imagine that, one summer's afternoon, a father turns to his son and says, "If you'd like to, we'll go to the ballpark this afternoon and hit some balls. And I'll tell you what—if your old Dad doesn't hit a baseball over the fences, he promises to buy you some ice cream."

"Great, Dad," says the son, "but I don't want to play baseball this afternoon. Let's play football in the yard instead."

The father agrees, and after a few spirited hours of play, the two head back to the house for dinner. As they brush the dirt out of their clothes, the son says, "Well, Dad, you owe me an ice cream. You didn't hit a single baseball over the fences."

Were the majority present at this scene and called upon to adjudicate the conflict, the father would protest in vain that his conditional promise of ice cream depended on the son's acceptance of his invitation to play baseball. After all, the majority would insist, the father's words were unambiguous: "If I don't hit a baseball over the fences, I promise to buy you some ice cream." And the majority would conclude that—to paraphrase its own reasoning—"given the ease with which the father expressly listed one eligibility criterion (his failure to hit a home run)," there was "no reason why he would bury a second (the son's acceptance of the invitation to play baseball) implicitly within" his proposal. *See* Majority op., *supra* at 6523.

But that is not how language works, either in conversation or in statutory interpretation. We begin with a statute's plain meaning, of course, but plain meaning is not meaning divorced from context. *See Verizon Communications, Inc. v. FCC*, 535 U.S. 467, 499-500 (2002) (rejecting a "plain-meaning argument [that] ignores the statutory setting in which [the provision at issue] occurs"); *Bailey v. United States*, 516 U.S. 137, 145 ("[T]he meaning of statutory language, plain or not, depends on context." (alteration in original)). A reasonable person would understand the father to be promising ice cream only if the son agrees to play baseball *and* the father hits no home runs. Similarly, in my view, the most reasonable interpretation of § 14708(d)(3)(A) is that it makes attorney fees available if the shipper takes advantage of the opportunity for arbitration that the carrier is statutorily bound to provide *and* no decision is rendered within the sixty-day period provided.

Turning to extrinsic sources—as we may when statutes are ambiguous, *see Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group*, 387 F.3d 1046, 1051-52 (9th Cir. 2004)—only strengthens the case against the majority's interpretation. The current § 14708 is the result of Congress's 1995 amendments to the dispute-settlement provisions of the Carmack Amendment. The earlier statute allowed, but did not require, carriers to offer arbitration. *See* 49 U.S.C. § 11711 (1995) (repealed 1995). It provided in relevant part:

> (d) In any court action to resolve a dispute between a shipper of household goods and a motor common carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title concerning the transportation of household goods by such carrier, the shipper shall be awarded reasonable attorney's fees if—
>
>> (1) the shipper submits a claim to the carrier within 120 days after the date the ship-

ment is delivered or the date the delivery is scheduled, whichever is later;

(2)   the shipper prevails in such court action; and

(3) (A)   no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute; or

(B)   a decision resolving the dispute was not rendered under a dispute settlement program approved under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection; or

(C)   the court proceeding is to enforce a decision rendered under a dispute settlement program approved under this section and is instituted after the period for performance under such decision has elapsed.

49 U.S.C. § 11711(d) (1995) (repealed 1995).

Notably, former § 11711(d)(3)(B) is *identical* for all relevant purposes to current § 14708(d)(3)(A), the provision at issue in this case: each grants attorney fees when "a decision resolving the dispute was not rendered [in arbitration] within the period provided."[1] It would be extremely odd if the two

_____

[1] The only difference is that the phrase "under a dispute settlement program approved under this section" has been replaced with "through arbitration under this section," a change that merely reflects the fact that arbitration programs need no longer be "approved" by the Commission.

provisions, whose text is essentially the same, meant two sharply different things. Yet that is what the majority's holding implies; for the former § 11711(d)(3)(B) cannot reasonably bear the interpretation the majority would place upon current § 14708(d)(3)(A). That interpretation would render subsection (A) of the earlier statute wholly redundant and unnecessary, because whenever "no dispute settlement program approved under [§ 11711] was available for use by the shipper to resolve the dispute," it would necessarily have been true that "a decision resolving the dispute was not rendered under a dispute settlement program approved under this section within the period provided."

Because I believe that the plain meaning of the language of § 14708(d)(3)(A) in its context[2] is that attorney fees are available only when shippers attempt arbitration but cannot obtain a decision within the allotted time—and because that interpretation, unlike the majority's, is consonant with the statute's history—I respectfully dissent.

---

[2]Part of the relevant context is the title of § 14708: "Dispute settlement program for household carriers." The majority's interpretation turns § 14708(d)(3)(A) into a general attorney-fee provision whose scope extends well beyond cases in which a dispute-settlement program is involved. The "title of a statute and the heading of a section are tools available for the resolution of a doubt" about the meaning of a statutory provision. *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (internal quotation marks omitted).