PHARMA BIO, INC., Plaintiff–Appellant,

v.

TNT HOLLAND MOTOR EXPRESS,
INC., Defendant–Appellee.

No. 96–1980.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1996.

Decided Dec. 17, 1996.

Jessica B. Tucker (argued), Stephen H. Dabrowski, Chicago, IL, for Plaintiff–Appellant.

Joel H. Steiner (argued), Paul A. Gajewski, Axelrod, Goodman, Steiner & Bazelon, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, BAUER and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff-appellant Pharma Bio, Inc. ("Pharma Bio") brought this action to recover damages against defendant-appellee TNT Holland Motor Express, Inc. ("TNT") pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (formerly § 11707), for damages to a shipment of salvaged red blood cells transported by TNT. TNT filed a motion for summary judgment, and on March 21, 1996, the district court issued a memorandum opinion and order finding that Pharma Bio had failed to establish a *prima facie* case for damages under the Carmack Amendment. Accordingly, the court granted TNT's motion for summary judgment.

Plaintiff appeals to this Court from the district court's grant of summary judgment in favor of TNT. For the reasons set forth below, we agree with Pharma Bio and reverse the decision of the district court.

## I.

For approximately ten years prior to the shipment in question, TNT transported salvaged red blood cells for Pharma Bio, from Pharma Bio's place of business in South Holland, Illinois, to the Upjohn Company in Kalamazoo, Michigan. On April 5, 1994, TNT picked up a shipment of salvaged red blood cells from Pharma Bio to the Upjohn Company, and then took the shipment to its Chicago freight terminal and placed the shipment in a "warm room" to protect the shipment from freezing. The temperature in this warm room was maintained at approximately 45F, unless the outside temperature exceeded 45F, in which case, over time, the warm room temperature would rise until it approached the actual outside temperature.

TNT's typical delivery service from Chicago to Kalamazoo is next day delivery, or two days at the latest. However, on April 6, 1994, prior to delivery of Pharma Bio's shipment of red blood cells to the Upjohn Company, the Teamsters Union went on strike at TNT and shut down its shipping operations until April 30, 1994. Following notification from TNT to Pharma Bio of the delay in shipment, Pharma Bio notified TNT that the red blood cells were then useless, because the cells were perishable and TNT had not kept the shipment refrigerated during the strike. Nevertheless, on May 2, 1994, TNT attempted to deliver Pharma Bio's shipment to the Upjohn Company. After checking with his supervisor, the Upjohn Company dock worker refused to accept delivery. No one at Upjohn Company inspected or opened the contents of the shipment, nor did anyone sample the contents to determine their condition; the dock worker only looked at the shipping date on the shipping papers. On May 4, 1994, Pharma Bio filed a standard loss and damage claim against TNT for $18,975 asserting that the shipment was exposed to excessive heat and thereby spoiled, and TNT denied the claim.

At no time could TNT observe the contents of the April 5 shipment at issue because the 47 packages were sealed when picked up. TNT contends that its only knowledge regarding the requirements of the shipment of red blood cells came from the Bill of Lading prepared by Pharma Bio, which stated "DO NOT EXPOSE TO EXCESSIVE HEAT OR FREEZING." However, Pharma Bio's president William Reiland has stated in an affidavit that TNT was told by Pharma Bio over the course of a ten-year relationship in shipping red blood cells on a weekly basis that red blood cells could not be shipped at temperatures in excess of 55F and were to be delivered no more than two days after pick up. According to Reiland, on numerous occasions during the ten-year business relationship, TNT employees were allowed to view Pharma Bio's operations, including production and packaging of red blood cells, and TNT always placed the shipments of red blood cells in a special place on its trucks and in its facilities to signify the delicate and

perishable nature of the shipment. Reiland also asserts in his affidavit that Pharma Bio always followed the same procedure in the packaging of red blood cells and once a week, every week, for approximately ten years, TNT has delivered each shipment to Upjohn Company in good condition. As for the shipment in question, Reiland claims that the red blood cells at issue were placed in units in plastic bags with "blue ice" frozen water packs and further packed in special containers insulated with styrofoam and that the cells were maintained at 55F or less throughout the entire packaging process as is required to keep red blood cells from spoiling.

## II.

Pharma Bio asserts that, in reviewing the record and all inferences in the light most favorable to Pharma Bio, plaintiff has established a *prima facie* case under the Carmack Amendment, and accordingly, the district court erred as a matter of law in granting summary judgment in favor of TNT.

This Court reviews the district court's grant of summary judgment in favor of TNT *de novo*, reviewing the record in the light most favorable to the non-moving party. See *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir.1996); *Thiele v. Norfolk & Western Railway Co.*, 68 F.3d 179, 181 (7th Cir.1995); *Walker v. Shansky*, 28 F.3d 666, 670 (7th Cir.1994). Summary judgment is appropriate only if the record, viewed in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265. After one party has filed a motion for summary judgment, "the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues [on] which the nonmovant bears the burden of proof at trial." *Walker*, 28 F.3d at 670–671.

The Carmack Amendment has been interpreted by the Supreme Court and this Court to provide that "a common carrier is liable for all losses which occurred while the goods were being transported by it, unless the carrier can demonstrate it is free from fault." See *Jos. Schlitz Brewing Co. v. Transcon Lines*, 757 F.2d 171, 176 (7th Cir. 1985), certiorari denied, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118. In order to recover damages under the Carmack Amendment, a plaintiff must first establish a *prima facie* case by providing evidence that (i) the goods in question had been delivered to the carrier in good condition; (ii) the goods had arrived at the final destination in a damaged or diminished condition; and (iii) the damages can be specified. See *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1144–1145, 12 L.Ed.2d 194; *Schlitz*, 757 F.2d at 173; *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 256 (7th Cir.1982). Once the plaintiff has satisfied these requirements, the defendant carrier will be liable for damage to the goods in question, unless it can show that it was free from negligence and that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pacific*, 377 U.S. at 137, 84 S.Ct. at 1144 (citations omitted); *Schlitz*, 757 F.2d at 173; *S.C. Johnson*, 695 F.2d at 256.

Defendant asserts, and the district court agreed, that Pharma Bio had failed to produce sufficient evidence as to the first and second elements of its *prima facie* case. As to the first element, whether plaintiff had proved by credible evidence that the salvaged red blood cells tendered to TNT were in good condition, the district court noted that the packages in the shipment were sealed when tendered to TNT and found that there was no evidence in the record that the blood cells were in good condition when tendered, even though Pharma Bio president Reiland's affidavit was sufficient for purposes of the summary judgment motion to establish that the salvaged blood cells were packaged properly. The court distinguished the cases cited by Pharma Bio—*Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc.*, 698 F.Supp. 1566 (M.D.Fla.1988), affirmed, 901 F.2d 1034 (11th Cir.1990), and *Pillsbury Company v. Illinois Central Gulf Railroad*,

687 F.2d 241 (8th Cir.1982)—based on Pharma Bio's alleged failure to provide evidence of the condition of the goods at the time of delivery, as opposed to the time of packaging. The district court relied on *D.P. Apparel Corp. v. Roadway Express, Inc.,* 736 F.2d 1, 3 (1984), where the First Circuit held that even though a plaintiff had presented testimony regarding its packaging procedures, "where the contents of the shipment are not visible or open for inspection, additional direct and affirmative proof is necessary to show that the cloth was in good condition when delivered to [the defendant carrier]."

The district court also held that while it was a much closer issue, Pharma Bio had failed to establish the second element of its *prima facie* case, *viz.,* that the goods in question arrived at the final destination in a damaged condition. The court rejected Pharma Bio's argument that the shipment must have arrived at Upjohn Company in a damaged condition because (i) TNT held the shipment in the "warm room" for almost a month, and during that time the outdoor temperature at O'Hare International Airport, near the freight terminal, had exceeded the 55F temperature known by TNT to cause damage to the red blood cells, and (ii) the shipment was not delivered to Upjohn Company until 27 days after it was tendered to TNT. The court noted that unlike the *Fine Foliage* case, there was no thermometer placed in the packages in the red blood cell shipment, Pharma Bio had not established the actual temperature in the "warm room" during the period in question, and no one had inspected the contents of the shipment to discern whether in fact the salvaged blood cells had been damaged. As to TNT's failure to ship the salvaged blood within two days, the district court pointed to Upjohn Company's acceptance criteria, which stated that salvaged blood received on or before the 84th day after its expiration date is considered acceptable, and the court maintained that

Pharma Bio had not established that the salvaged blood was delivered 85 or more days after its expiration date.

■■■ Pharma Bio may show by circumstantial evidence that the shipment of red blood cells was delivered to TNT in good condition. See *Accura Systems, Inc. v. Watkins Motor Lines, Inc.,* 98 F.3d 874, 877 (5th Cir.1996); *Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc.,* 901 F.2d 1034, 1038–1039 (11th Cir.1990). The *Fine Foliage* case is instructive on this point. There the Eleventh Circuit affirmed the district court's finding that the plaintiff had shown that certain ferns were in good condition when delivered to the carrier based on "'the approval of the fern by the Department of Agriculture; the testimony as to the care and temperature control of the fern after its harvest; and the fact that other fern, packaged in the identical manner and stored in the same cooler as the subject fern, arrived at overseas destinations in acceptable condition.'" *Id.* at 1038 (citing *Fine Foliage,* 698 F.Supp. at 1573). In the instant case, Reiland, the president of Pharma Bio, stated in his affidavit that Pharma Bio followed certain procedures for hundreds of shipments of red blood cells, including the shipment in question, that kept the red blood cells from spoiling, and that all those shipments were delivered in good condition. Therefore, Pharma Bio asks us to infer that the red blood cells in this case were also delivered to TNT in good condition, thus satisfying the first element of Pharma Bio's *prima facie* case. This Court believes Reiland's affidavit suffices to establish the condition of the red blood cells at the time they were delivered to TNT in almost exactly the same way as the plaintiff in *Fine Foliage* established the condition of the ferns at the time of shipping.* Furthermore, this case comes to us on a motion for summary judgment. Reviewing the evidence in the light most favorable to Pharma Bio, as we are required to do, this Court concludes that Reiland's affidavit raises a genuine issue of material fact as to the good condition of the red blood cells when delivered to TNT.

---

* See also *Accura Systems,* 98 F.3d at 878–880; *Pillsbury,* 687 F.2d at 244–245 (Plaintiff's evidence of its preloading inspection and cleaning procedures and evidence that a test car switched through the defendant carrier's yard became infested while one switched to another carrier's yard did not is sufficient proof of the good condition of the subject goods); *Frosty Land Foods v. Refrigerated Transport,* 613 F.2d 1344, 1347 (5th

Cir.1980) (Although plaintiff failed to introduce any specific evidence noting precisely condition of meat at time it was placed on trailer, evidence of general quality control measures and the fact that forequarters of the same carcasses were sold to other customers without complaints was sufficient to support finding that beef was delivered to carrier in good condition); but see *D.P. Apparel,* 736 F.2d 1 (Plaintiff had not proven good

Pharma Bio may also prove by circumstantial evidence that the red blood cells were delivered by TNT to the Upjohn Company in a damaged condition. See *Fuente Cigar, Ltd. v. Roadway Express, Inc.,* 961 F.2d 1558, 1561 (11th Cir.1992). This second element of Pharma Bio's *prima facie* case is more difficult than the determination of the condition of the red blood cells at the time of shipping, because no one ever made an inspection of the red blood cells upon their attempted delivery to Upjohn Company. It is unfortunate that neither party has presented evidence of how closely and quickly the "warm room" temperature tracks changes in the air temperature outside the room. Such evidence seems relatively easy to obtain. However, on 18 of the 28 days the salvaged blood was stored in the "warm room," the actual outside temperature was above 55F (the maximum temperature to which Pharma Bio claims the shipment could be exposed without spoiling) and on three consecutive days in April 1994 the temperature went above 80F. Reiland has asserted in his affidavit that TNT was told that the red blood cells could not be shipped at temperatures in excess of 55F and needed to be delivered no more than two days after pickup. Reviewing these facts and all inferences in the light most favorable to Pharma Bio, this Court finds that plaintiff has provided sufficient evidence that while the blood cells were stored the "warm room" temperature exceeded 55F for at least several days, thereby causing the red blood cells to spoil and be rendered useless to Upjohn Company. We also find that, while a close issue, this circumstantial evidence creates a genuine issue of material fact as to the second prong of Pharma Bio's *prima facie* case.

TNT asserted in oral argument here that Reiland could not possibly have personal knowledge of certain factual matters set forth in his affidavit that Pharma Bio is using to support its claims regarding the condition of the goods prior to shipping and upon delivery to Upjohn Company. However, Reiland's affidavit begins with the statement that he has "personal knowledge of and, if sworn as a witness in this matter, would testify to the following facts." Perhaps TNT would be able to destroy Reiland's credibility on the witness stand during a trial. But credibility is a determination to be made by a finder of fact, not on summary judgment. As already shown, Reiland's affidavit certainly raises genuine issues of material fact as to the condition of the salvaged blood cells at the time they were delivered to TNT and at the time they were delivered to Upjohn Company. We will not grant summary judgment in favor of TNT based on TNT's attack on the credibility of an affiant whose affidavit otherwise shows that there are genuine issues as to material facts.

### III.

For the reasons discussed above, the decision of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

condition of shipped cloth when only evidence presented were general statements of plaintiff's agent concerning its shipment procedures and documents relating to cloth's quality prior to shipment, and documents make no reference to cloth's condition on date of shipment and fail to indicate when in fact cloth was inspected).

