In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3024

Allied Tube & Conduit Corporation,

Plaintiff-Appellee,

v.

Southern Pacific Transportation Company,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 4594--Charles R. Norgle, Sr., Judge.


Argued February 10, 2000--Decided April 28, 2000



      Before Coffey, Flaum, and Diane P. Wood, Circuit
Judges.

      Flaum, Circuit Judge.  Allied Tube and Conduit
Corporation ("Allied") brought suit under the
Carmack Amendment, 49 U.S.C. sec. 14706, against
Southern Pacific Transportation Company
("Southern Pacific") for damages allegedly
sustained to its steel pipes during transit. The
district court entered judgment in favor of
Allied in the amount of $47,490.15. For the
reasons stated herein, we affirm.

Background

      In June 1996, Southern Pacific agreed to
transport a shipment of approximately eighty
bundles of fire protection/sprinkler system pipe
to Hayward, California for Allied. Pursuant to
their agreement, Allied paid $2,916 in freight
charges to Southern Pacific, and Southern Pacific
issued to Allied a bill of lading. Allied loaded
the shipment onto one of Southern Pacific's rail
cars--an open top, bulkhead type flatcar--at
Allied's manufacturing plant in Illinois. Allied
did not cover the pipe shipment with protective
covering. Allied then tendered the railcar to
Illinois Central Railroad Company for carriage to
St. Louis, where Illinois Central tendered it to
Southern Pacific for carriage to California.

When Southern Pacific presented the shipment at its California destination, the pipe was contaminated, pitted, and corroded by what appeared to be rock salt. Allied rejected the entire shipment. Southern Pacific learned that the shipment had been damaged, but it chose not to inspect it. Allied ultimately salvaged the shipment for scrap iron at auction for $6,211.

On June 26, 1997, Allied sued Southern Pacific for the value of the shipment pursuant to the Carmack Amendment, 49 U.S.C sec. 14706. Following a bench trial, the district court found in favor of Allied for $47,490.15./1 Southern Pacific now appeals.

Discussion

The Carmack Amendment, a section of the Interstate Commerce Act, provides shippers with the statutory right to recover for actual losses to their property caused by carriers. See Gordon v. United Van Lines, Inc., 130 F.3d 282, 285-86 (7th Cir. 1997). It "has been interpreted by the Supreme Court and this Court to provide that 'a common carrier is liable for all losses which occurred while the goods were being transported by it, unless the carrier can demonstrate it is free from fault.'" Pharma Bio, Inc. v. TNT Holland Motor Express, Inc., 102 F.3d 914, 916 (7th Cir. 1996) (quoting Jos. Schlitz Brewing Co. v. Transcon Lines, 757 F.3d 171, 176 (7th Cir. 1985)). Pursuant to this statute, in an action to recover from a carrier for damage to a shipment, the shipper establishes a prima facie case when it shows (1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages. Upon such a showing, the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability./2 See Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 137-38 (1964).

The district court found that Allied had established a prima facie case under this scheme and that Southern Pacific failed to meet its burden to avoid liability. Southern Pacific argues that this conclusion was erroneous in several respects.

1. Burden of Proof

Allied first argues that the district court erroneously failed to find that this case involved a "shipper's load and count" shipment, in which case the burden would be on Allied to show that Southern Pacific acted negligently. The

district court relied on the fact that no express language on Southern Pacific's bill of lading, nor anything else in the record, indicated that this was to be a "shipper's load and count" shipment, and it concluded that this was not such a shipment. Southern Pacific contends that the circumstances of this transaction--in particular, that Allied Tube packed and loaded the pipe and selected the type of rail car on which the pipe was shipped--prove that this was, indeed, a "shipper's load and count" shipment, and therefore the district court should have required Allied to show Southern Pacific's negligence.

We find no error in the district court's finding that this was not a "shipper's load and count" shipment. As noted by the district court, other jurisdictions have generally looked to whether a "shipper's load and count" designation appears on the face of the bill before shifting the burden of proof. See, e.g., Johnson & Johnson v. Chief Freight Lines Co., 679 F.2d 421, 422-23 (5th Cir. 1982); Minneapolis St. Paul & Sault Ste. Marie R.R. v. Metal-Matic, Inc., 323 F.2d 903, 905 (8th Cir. 1963). Even the federal statutory provision that Southern Pacific invokes for the proposition that a common carrier is not liable for damages caused by improper loading if the shipper loads the goods actually supports the district court's decision; that provision requires that the words "shipper's load and count" be printed on the bill of lading./3 Moreover, the New Jersey district court case that Southern Pacific cites for the proposition that a shipper's load and count shipment need not be expressly designated as such on the bill of lading actually supports the opposite conclusion. Modern Tool Corp. v. Pennsylvania Railroad Co., 100 F.Supp. 595, 596-97 (D.N.J. 1951), suggests that omission of such a designation "serves to shift upon the carrier the burden of proving that the goods were improperly loaded by the shipper, and that the damage ensued from that cause."

The district court did not err in finding that Allied's shipment was not a "shipper's load and count" shipment. Accordingly, Allied was not required to prove Southern Pacific's negligence to establish its prima facie case.


2. Allied's Prima Facie Case

As noted above, the Carmack Amendment does not place upon a shipper the burden of proving that a carrier was negligent in order to recover for damage to the shipment. Rather, once a shipper demonstrates (1) delivery of its goods to the carrier in good condition; (2) arrival in damaged condition; and (3) specific damages, the burden

of proof shifts to the carrier, who can avoid liability if it shows that (1) it was not negligent; and (2) the damage to the cargo was caused by, among other things, the act of the shipper.

Southern Pacific argues that Allied failed to prove the first element: that the steel pipe was in good condition at the time it was delivered to Southern Pacific by Illinois Central, or when it was loaded by Allied. According to Southern Pacific, the only evidence Allied offered in this regard was the testimony of one of its forklift operators, Arturo Zambrano, who testified about the general procedures used by Allied. However, Zambrano did not know whether he loaded this particular shipment. Southern Pacific argues that this testimony was insufficient to establish good condition, and therefore Allied had the burden of proving Southern Pacific negligent--a burden it never met.

We remain unpersuaded that the district court's finding should be disturbed. This Court has previously held that a shipper may establish by circumstantial evidence that its cargo was in good condition upon delivery to the carrier. See Pharma Bio, 102 F.3d at 917; see also Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc., 901 F.2d 1034, 1038-1039 (11th Cir. 1990). For example, in Pharma Bio, the shipper was not able to present any direct evidence regarding the condition of its goods when delivered to the carrier, but this Court ruled that the shipper had successfully proven good delivery based upon the reasonable inferences drawn from testimony about general procedures used in preparing goods for shipment. 102 F.3d at 917. Likewise, it was proper for the district court to draw inferences about the condition of this shipment from Zambrano's testimony about Allied's standard procedures for selecting, inspecting, and loading pipe. These inferences were further supported in this case by the fact that when Illinois Central, the intermediate rail carrier, received Allied's shipment, it issued its own waybill without noting any exceptions regarding the shipment's condition. Finally, Southern Pacific's bill of lading notes no exceptions regarding the condition of the shipment and states that it received the shipment "in apparent good order." Although the issuance of a waybill or a bill of lading, on its own, may not necessarily establish a prima facie case that an entire shipment was received in good order, see Blue Bird Food Products Co. v. Baltimore & Ohio Railroad Co., 474 F.3d 102 (3d Cir. 1972); Hoover Motor Express Co. v. United States, 262 F.2d 832 (6th Cir. 1959), the documents in this case are

corroborative. We see no reason to reverse the district court's conclusion, considering the evidence as a whole, that Allied established that it delivered the shipment in good condition.

Southern Pacific also argues that Allied failed to prove that the pipe was ruined, and that Allied could not determine the extent of damage with the specificity needed to make out a prima facie case. See Pharma Bio, 102 F.3d at 916. Southern Pacific contends that Allied never proved that the pipe was unsuitable for its intended use. When the pipe arrived in California, Allied performed only a visual inspection of about one-third of the shipment. At that time, it was still stacked in bundles, and no attempt was made to determine whether the entire shipment, including interior bundles, was damaged.

The district court specifically found that "Allied establishes that the pipe was a total loss at the time of delivery to Hayward, California because pit marks marred 100 percent of the pipes inspected," and our own review of the record reveals no reason to revisit this factual dispute. The district court relied on the testimony of Mary Ann Peddie, a representative of the consignee. Peddie personally inspected a truckload of the pipe and closely inspected approximately ten to fifteen bundles of the pipe unloaded from the truck. She further testified that it was unnecessary to break the bundles apart because it was clear that no customer would accept fire-protection pipe that appeared to be damaged, and she testified that one hundred percent of the pipe she inspected showed pitting and erosion. We have previously held that a plaintiff in this situation need not test every single one of the goods in a shipment. Rather, "[a] sampling will be accepted as proof of damages when 'a reasonably representative sample has been taken and so long as the sample is sufficient to indicate fairly the quality, condition and nature of damage to the whole cargo.'" S.C. Johnson & Son v. Louisville & Nashville Railroad Co., 695 F.2d 253, 259 (7th Cir. 1982) (citations omitted); see also Thousand Springs Trout Farms v. IML Freight, Inc., 558 F.2d 539 (9th Cir. 1977) (holding that an inspection of a small sample of the total was sufficient to establish total loss of a shipment). The district court was entitled to rely on Peddie's testimony and Southern Pacific has failed to call into doubt the district court's finding regarding the full extent of Allied's loss.

Based on the foregoing, the district court's holding that Allied successfully established each of the elements necessary to establish a prima

facie case of liability against Southern Pacific was proper. At that point, the burden was no longer on Allied to prove Southern Pacific's negligence. Rather, the burden was on Southern Pacific to demonstrate, among other things, that it was free from negligence. Having failed to rebut this presumption, Southern Pacific was properly held liable for the damage to the shipment.

3.  Mitigation of Damages

Southern Pacific's final argument is that Allied failed to mitigate damages, and the district court therefore erred in awarding Allied the entire cost of the pipe shipment. Southern Pacific contends that Allied did not attempt to clean the pipe immediately, and by the time Allied finally tried to sell it, it could only be sold for scrap.

We agree with the district court's rejection of this mitigation argument. Illinois law requires that, "[i]n the event [an injured party] fails to take reasonable steps to avoid additional harm, he bears the risk of any increased dangers which could have been avoided." Toledo Peoria and Western Railway v. Metro Waste Systems, Inc., 59 F.3d 637, 640 (7th Cir. 1995). Neither below nor here does Southern Pacific offer any evidence that the shipment was damaged further between the time it arrived in California and the time it was sold as scrap, nor does it offer any valuation of the additional loss caused by delay. Southern Pacific bears the burden of proving failure to mitigate and it has failed to meet that burden.

Conclusion

For the reasons stated herein, the decision of the district court is AFFIRMED.

/1 The damages were calculated as follows: the cost of the shipment ($50,785.15) plus Allied's shipping costs ($2,916.00) minus the shipment's salvage value ($6,211.00).

/2 The excepted causes are: acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods. See Missouri Pacific, 377 U.S. at 137.

/3 Southern Pacific refers us to 49 U.S.C. sec. 80113(c), which provides:

A common carrier issuing a bill of lading is not liable for damages caused by improper loading if--

(1)  the shipper loads the goods; and

(2)  the bill contains the words "shipper's weight, load, and count", or words of the same meaning indicating the shipper loaded the goods.