UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DUCK HEAD FOOTWEAR,
                    *Plaintiff-Appellee,*

v.

THE MASON AND DIXON LINES,
INCORPORATED,
                    *Defendant-Appellant,*

                    and                              No. 01-1670

CAPITAL CORPORATION,
                    *Defendant,*

M/V ZIM SAO PAULO, her engines,
boilers, appurtenances, etc., in rem;
DSR SENATOR LINES,
                    *Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-00-211)

Argued: June 3, 2002

Decided: July 29, 2002

Before WILKINSON, Chief Judge, and NIEMEYER and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Herbert Alan Dubin, WIESENFELD & DUBIN, P.C., Rockville, Maryland, for Appellant. James Dygert Skeen, WRIGHT, CONSTABLE & SKEEN, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Mason & Dixon Lines, Inc. (M & D) appeals from the district court's order granting summary judgment to Duck Head Footwear (Duck Head), on Duck Head's claim for damages resulting from the loss of several thousand pairs of shoes that Duck Head had hired M & D to ship from Norfolk, Virginia to Lynchburg, Virginia. The district court found that M & D was liable to Duck Head under the Carmack Amendment, 49 U.S.C.A. § 14706(a)(1) (West 1997), which creates presumptions relating to carrier liability for goods damaged or lost during interstate shipment. Finding no reversible error, we affirm.

I.

This appeal concerns a container of shoes that Duck Head arranged to have shipped from Santos, Brazil, to Norfolk, Virginia in January of 1999. Duck Head, a footwear distributor, purchased 644 cartons, containing 7,773 pairs of shoes, from suppliers in Brazil and had them collected by Capital Corporation[1] at Capital's warehouse in Brazil.

---

[1]Duck Head hired Capital to collect the shoes in Brazil, load them into a container, and transport them to the United States. Duck Head named Capital as a defendant in this action below, but the district court granted Capital's motion for summary judgment, and Duck Head has not appealed that portion of the district court's order.

Capital placed the shoes in a shipping container, which it then inspected and weighed, determining that its total loaded weight was 12,928 kg. The shoes and cartons weighed 9,128 kg and the container itself 3,800 kg. Capital then sealed the container with two seals bearing individualized numbers.[2] The container was shipped by truck from Capital's warehouse to Santos, Brazil, where it was loaded onto a ship, the M/V ZIM SAO PAULO (the *Zim Sao Paulo*), for transport to the United States. (J.A. at 137.)

Brazilian customs officials inspected the container when it was loaded onto the ship. They found that the seals were intact and confirmed that the container weighed 12,928 kg. Capital issued a series of bills of lading[3] on January 4, 1999, indicating the weight of the shipment and its contents.

The *Zim Sao Paulo*, operated by DSR Senator Lines (DSR), arrived in Norfolk, Virginia, on February 1, 1999. M & D, the trucking company hired to transport the shoes from the port in Norfolk to Duck Head's warehouse in Lynchburg, Virginia, picked up the shoes on that date, issuing a bill of lading. This bill of lading noted the weight of the container's contents (the shoes) as 20,124 pounds,[4] but M & D did not actually weigh the container or the shoes to arrive at this figure. An M & D driver picked up the shipment in Norfolk on February 1 and drove it to an M & D storage facility for the night. This driver noted that the container still had two intact seals.

The next day, a second M & D driver picked up the container for transport to Lynchburg, Virginia. The second driver delivered the

---

[2]One of these seals is described by the parties as bearing a bar code.

[3]A bill of lading is a "[d]ocument evidencing receipt of goods for shipment issued by person engaged in business of transporting or forwarding goods . . . ." Black's Law Dictionary at 168 (6th ed. 1990). It is further defined as "[a]n instrument in writing, signed by a carrier or his agent, describing the freight so as to identify it, stating the name of the consignor, the terms of the contract for carriage, and agreeing or directing that the freight be delivered to the order or assigns of a specified person at a specified place." *Id.*

[4]20,124 pounds is approximately equal to 9,128 kilograms, the weight of the shoes as determined by Capital and Brazilian customs officials.

container to Duck Head's Lynchburg facility on February 2. Upon its arrival in Lynchburg, a Duck Head employee, Tyrone Morton, opened the container, breaking both seals (which, the parties agree, appeared intact). According to his signed affidavit, Morton noticed immediately upon opening the container that three cartons of shoes were damaged, and noted that fact on the bill of lading when accepting delivery. Morton stated in his affidavit that he did not, however, inspect the container's entire contents until after accepting delivery. Morton further stated that upon completing an inspection of the container's contents, he found that 264 cartons, containing 3,180 pairs of shoes, or nearly half the total of pairs of shoes that were supposed to be in the container, were missing.[5]

Duck Head instituted this lawsuit on January 21, 2000, seeking $93,000 in damages as compensation for the lost shoes. Duck Head initially sued Capital, DSR, and M & D. DSR was dismissed from the suit. Thereafter, all three remaining parties moved for summary judgment. The district court granted summary judgment to Duck Head against M & D and to Capital against Duck Head, and denied M & D's motion for summary judgment. M & D noted this appeal.

## II.

We review the district court's entry of summary judgment in favor of Duck Head de novo, reviewing the facts in the light most favorable to M & D, the non-moving party. *See American Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A mere scintilla of

---

[5]It is not clear from the parties' arguments whether either of them has a theory as to the actual fate of the missing shoes. M & D did suggest at oral argument that Morton or some other Duck Head employee might have absconded with the shoes but offered no basis for that theory.

proof is not sufficient to prevent summary judgment, however; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Id.* at 251. M & D advances two principal arguments before us, which we address in turn.[6]

A.

First, M & D argues that the district court erred in applying the Carmack Amendment to Duck Head's motion for summary judgment. The Carmack Amendment states in relevant part that

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or

---

[6]Duck Head argues that this appeal should be dismissed as interlocutory because at the time M & D filed its notice of appeal, no damages had been assessed. M & D responds that appellate jurisdiction is proper under 28 U.S.C.A. § 1292(a)(3), which authorizes the courts of appeals to hear "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." Duck Head argues essentially that this is no longer an admiralty case because, although it sued Capital and DSR pursuant to admiralty jurisdiction, such jurisdiction does not extend to M & D, the only remaining defendant on appeal, following the dismissal of DSR and grant of summary judgment to Capital.

In our view, this argument is foreclosed by Federal Rule of Civil Procedure 9(h), which states that "a case that includes an admiralty or maritime claim . . . is an admiralty case within 28 U.S.C.A. § 1292(a)(3)." The Advisory Committee's Notes make clear that an order disposing of a nonadmiralty claim in an admiralty case is appealable regardless of whether the admiralty claim is disposed of by that order: "so long as the case involves an admiralty claim and an order otherwise meets statutory requirements, the opportunity to appeal should not turn on the circumstance that the order does — or does not — dispose of an admiralty claim." Fed. R. Civ. P. 9(h) advisory committee's note. Thus, we conclude, appellate jurisdiction is proper here.

> service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C.A. § 14706(a)(1). This section "makes a carrier liable for the actual loss or injury to the property it transports." *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir. 2000) (internal quotation marks omitted). The Amendment preempts a shipper's state and common law claims against a carrier for loss or damage to goods during shipment. *See id.* at 705.

The Carmack Amendment states that it governs transactions covered by "subchapter I or III of chapter 135" of Title 49. Section 13501 of Title 49, which appears in subchapter I, covers "transportation by motor carrier . . . between a place in . . . the United States and a place in a foreign country to the extent the transportation is in the United States." 49 U.S.C.A. § 13501(1)(E) (West 1997). Where a separate bill of lading is issued to cover the domestic leg of a shipment of foreign goods to a place in the United States, the Amendment covers that domestic leg. *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir. 1986) ("when a shipment of foreign goods is sent to the United States with the intention that it come to final rest at a specific destination beyond its port of discharge, then the domestic leg of the journey (from the port of discharge to the intended destination) will be subject to the Carmack Amendment as long as the domestic leg is covered by separate bill or bills of lading"); *see also Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703-04 (4th Cir. 1993) (noting that applicability of the Carmack Amendment could not be determined because "[n]o evidence appear[ed] in the record to

show whether any domestic bill of lading was issued to cover the domestic segment of the shipment" from Taiwan to Baltimore).

M & D concedes that the relevant transportation of the shoes was between Brazil and Virginia. (Appellant's Br. at 5 (stating that "truck transportation [of the shoes by M & D] was the transportation of a shipment in foreign commerce not intrastate commerce because trucking was an integral part of a shipment from Santos, Brazil to Lynchburg, Virginia")); *see also Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74 (2d Cir. 2001) (stating that "whether . . . § 13501(1)(A) or (E) is satisfied to trigger application of the Carmack Amendment is determined by reference to the intended final destination of the shipment as that intent existed when the shipment commenced" and that "[t]his intent fixes the character of the shipment for all the legs of the transport within the United States"). M & D further concedes that it issued a separate bill of lading covering the domestic leg of this shipment. Thus, we conclude that M & D's transportation of the container from Norfolk to Lynchburg was within the scope of the Carmack Amendment, and the district court did not err in applying the Amendment to Duck Head's claim against M & D.

M & D also asserts that the district court should have applied a provision of the Pomerene Bills of Lading Act, specifically 49 U.S.C.A. § 80113(b) (West 1997),[7] which, it contends, would afford M & D protection from liability in these circumstances.[8] M & D argues that

---

[7]This statute is actually a recodification of the old Pomerene Act, which formerly appeared at 49 U.S.C.A. §§ 81-124. *See Underwood Cotton Co. v. Hyundai Merchant Marine, Inc.*, 288 F.3d 405, 406 (9th Cir. 2002). It will be referred to here as the Pomerene Act for ease of reference.

[8]M & D argues in its brief that the "protection of federal law afforded common carriers from liability for loss or damage in sealed containers is applicable to [M & D]," (Appellant's Br. at 8), but the brief does not identify the source of the allegedly applicable federal-law "protection." M & D clarified at oral argument, however, that it believes this protection is contained in the Pomerene Act.

Section 80113(b) provides in part that

A common carrier issuing a bill of lading is not liable [for non-receipt of goods] . . . when the bill . . . is qualified by "contents

this provision protects "common carriers from liability for loss or damage in sealed containers . . . ." (Appellee's Br. at 8.) Duck Head argues in response that the Pomerene Act is inapplicable to M & D's transportation of the shoes, because that transportation was pursuant to a bill of lading covering only an *intrastate* segment of the shoes' transportation.

Section 80102 of Title 49 states that

> [t]his chapter [801, of which § 80113 is a part] applies to a bill of lading when the bill is issued by a common carrier for the transportation of goods—
>
> (1)  between a place in the District of Columbia and another place in the District of Columbia;
>
> (2)  between a place in a territory or possession of the United States and another place in the same territory or possession;
>
> (3)  between a place in a State and a place in another State;
>
> (4)  between a place in a State and a place in the same State through another State or a foreign country; or
>
> (5)  from a place in a State to a place in a foreign country.

49 U.S.C.A. § 80102 (West 1997). Two aspects of this section are noteworthy here. First, unlike the Carmack Amendment, which applies to "transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105," 49 U.S.C.A. § 14706(a)(1), the Pomerene Act applies "to a bill of lading." Thus,

---

or condition of contents of packages unknown", "said to contain", "shipper's weight, load, and count", or words of the same meaning; and to the extent the carrier does not know whether any part of the goods were received or conform to the description.

49 U.S.C.A. § 80113(b) (internal subdivisions omitted).

the bill of lading, rather than the transportation service provided, is the relevant object of inquiry in determining whether the Act applies. The bill of lading M & D issued here was for transportation from Norfolk to Lynchburg — entirely intrastate — and thus the Pomerene Act is not implicated. Second, and equally fatal to M & D's claim that the Pomerene Act applies, is the use of the words "from" and "to" in § 80102(5) ("from a place in a State to a place in a foreign country"). The Pomerene Act, then, by its terms, does not apply to shipments from a place in a foreign country to a place in a state in this country. Further support is lent to this conclusion by the four subsections that precede § 80102(5), all of which use the word "between" in describing the bills of lading to which the Act applies; Congress, we may presume, did not lightly select the construction "from one place to another," but instead meant to cover only bills of lading issued for the transportation of goods *from* a state *to* a foreign country, and not the reverse. In sum, M & D's argument that the district court should have applied the Pomerene Act is ill-founded.

B.

M & D next asserts that it adduced evidence sufficient to preclude summary judgment in favor of Duck Head, specifically evidence suggesting that the seals on the container in question were (or appeared) intact at the time M & D delivered it to Duck Head in Lynchburg and that M & D "accepted this container as subject to shipper load and count." (Appellant's Br. at 10.) Neither of these factual "issues" identified by M & D, however, supports its contention that summary judgment should not have been granted to Duck Head.

Under the Carmack Amendment, a plaintiff must show "delivery [of the goods] in good condition, arrival in damaged condition, and the amount of damages." *Oak Hall Cap & Gown Co., Inc. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 294 (4th Cir. 1990). Once the plaintiff establishes such a prima facie case, the burden shifts to the carrier to show that one of the following caused the loss: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; or (d) the inherent vice or nature of the goods". *Missouri Pac. Railroad v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964).

In support of its prima facie case, Duck Head demonstrated that M & D took delivery of the container and asserted on its own bill of lading that its contents weighed 9,128 kg, the asserted weight of the complete shipment. *See Westway Coffee Corp. v. M.V. Netuno*, 675 F.2d 30, 32 (2d Cir. 1982) (when a carrier issues a bill of lading declaring the gross weight of the container, regardless of whether the carrier actually weighs the container, the carrier is presumed to have received that gross weight absent an evidentiary showing rebutting the presumption); *see also National Transp., Inc. v. Inn Foods, Inc.*, 827 F.2d 351, 354 (8th Cir. 1987) (when a carrier issues a clean bill of lading for cargo open to inspection, whether or not the carrier does in fact inspect the cargo, it will be held liable for delivery of the cargo in good condition) (citations omitted). Duck Head further demonstrated, and M & D does not dispute, that the container as delivered to Duck Head was missing a substantial amount of the cargo that comprised the shipment, and offered proof of the amount of its damages.[9] The district court thus did not err in finding that Duck Head had established a prima facie case under the Carmack Amendment.

Neither of M & D's asserted defenses could relieve it of liability under the Carmack Amendment. M & D's argument that the seals on the container were intact would not constitute a defense to Duck Head's claim against it because such evidence is not directed to any of the allowable defenses under the Amendment. Likewise, M & D's argument that it received the goods "subject to shipper load and count" is unavailing both because M & D's own bill of lading states that the container contained 9,128 kg of cargo, or exactly the weight Duck Head contends it shipped, and because M & D's bill of lading contains no such limitation. *See Allied Tube & Conduit Corp. v. Southern Pac. Transp. Co.*, 211 F.3d 367, 370 (7th Cir. 2000) (concluding, where the carrier railroad contended that the shipment was subject to shipper's load and count, that the absence of any such notation on the carrier's bill of lading rendered the contention meritless).

---

[9]No damages award had been entered at the time M & D took its appeal in this case, but we were advised by the parties that the district court subsequently awarded damages totaling approximately $100,000 to Duck Head.

We are therefore unable to conclude that the district court erred in granting summary judgment to Duck Head.[10]

### III.

For the reasons stated above, the judgment of the district court is

*AFFIRMED.*

---

[10]In addition to the arguments discussed above, M & D asserts a "policy" argument — to wit, that the "container revolution" in shipping — which it defines as the advent of the use of shipping containers that "permit[ ] individual commodities to be loaded by the consignor at the point of origin without interim handling again until the container arrives at its ultimate destination and is unloaded by the consignee," (Appellant's Br. at 11 (quoting Paul Stephen Dempsey, *The Law of Intermodal Transportation: What It Was, What It Is, What It Should Be*, 27 Transp. L.J. 367, 369 (2000)) — has rendered any requirement that a carrier weigh the cargo it carries contrary to custom in the industry. Nevertheless, M & D argues, the district court's holding effectively requires carriers to weigh the cargo they carry or risk liability. As discussed above, the Carmack Amendment establishes presumptions that allocate the risk of loss in circumstances such as those presented in this case. The actions that parties take to protect against such loss are undertaken against the backdrop of these presumptions and are entirely of their own choosing. M & D's argument is essentially an argument that the law is out of step with industry practices. We express no opinion as to the correctness of that assertion, noting only that Congress's directives on this subject must govern.