**OSHKOSH STORAGE COMPANY,**
Plaintiff,

v.

**KRAZE TRUCKING LLC, Defendant.**

Case No. 13–C–1246.

United States District Court,
E.D. Wisconsin.

Signed July 17, 2014.

Michael Lim, Emily Z. Dunham, Reff Baivier Bermingham Zierdt & Lim, Oshkosh, WI, for Plaintiff.

Jason Orleans, Chilton Yambert & Porter LLP, Waukegan, IL, for Defendant.

## ORDER DENYING [20] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING [21] PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

WILLIAM C. GRIESBACH, Chief Judge.

Plaintiff Oshkosh Storage Company initially brought this action against defendant Kraze Trucking, LLC, in Wisconsin state court as an apparent negligence claim. Oshkosh Storage asserts that Kraze delivered a shipment of cheese in a defective condition because Kraze's delivery driver compromised the shipment safety seal, thereby decreasing the value of the shipment in the amount of $19,278.61 (Compl. ¶¶ 6, 9, ECF No. 1–1.) Kraze removed the case to this Court, asserting that the Carmack Amendment, 49 U.S.C. § 14706, preempted any state law negligence remedy. (ECF No. 1.) Oshkosh Storage did not challenge the removal, and on March 21, 2014, Kraze filed a motion for summary judgment. (ECF No. 20.) Oshkosh Storage then cross-moved for summary judgment on April 17, 2014. (ECF No. 21.) For the reasons stated below, Kraze's motion will be denied and Oshkosh Storage's cross-motion will be granted.

### I. Background

The relevant facts in this matter are largely undisputed. On or about April 3, 2013, Kraze delivered for Oshkosh Storage a truckload of kosher cheddar cheese from Litchfield, Minnesota, to Oshkosh, Wisconsin, pursuant to a bill of lading. (See Bill of Lading, Ex. A, ECF No. 20–1 at 5.) Oshkosh Storage President Carl Doemel asserts that the shipment was custom made according to the specifications of the

customer, Dairiconcepts. (Doemel Aff. ¶ 5, ECF No. 24.) Kraze driver Brandon Daniels hauled the load in a sealed refrigerated trailer. Daniels contends that when he arrived on the Oshkosh premises, the load was sealed. (Daniels Aff. ¶ 5, Ex. B, ECF No. 20–1 at 6.) Oshkosh Storage receptionist Sandy Knitt attests that when Daniels arrived, she checked him in by stamping his paperwork with an inbound stamp and gave the load a lot number. (Knitt Aff. ¶¶ 1–3, ECF No. 26.) Knitt also gave Daniels instruction sheets with his paperwork. (Id. ¶ 4.) One of the instruction sheets indicated that Oshkosh Storage may reject a load of food products for various reasons, including "[n]o seal, broken seal, or seal does not match manifest." (ECF No. 26 at 4.) Knitt asserts that she verbally told Daniels to "pull up around the north side of the building at the third set of dock doors and pull up by the stairway and our warehouse guy will get [Daniels'] paperwork and break the seal." (Knitt Aff. ¶ 6.) Knitt has also submitted photos of signage in the check-in area which states: "Please DO NOT break the seal on the trailer. Our warehouse staff will verify the seal number and break the seal prior to unloading." (ECF No. 26 at 8.)

While at the Oshkosh facility, Daniels admits that he broke the trailer seal, opened the trailer bay doors, and backed his trailer into an open loading dock. (Daniels Aff. ¶ 6.) Oshkosh Storage employee Tessy Jensen testifies that warehouse employee John Schaetz called to inform her that the seal on Daniels' truck was broken and that it had not been broken by Oshkosh Storage employees. (Jensen Aff. ¶ 3, ECF No. 25.) Jensen contacted the receiving customer, Dairiconcepts, which instructed her to reject the load. (Id. ¶ 5.) Great West Casualty, Kraze's insurer, ultimately sold the reject-ed load for $51,000, a sum $19,278.61 less than the original invoice price.

## II. Analysis

The Carmack Amendment to the Interstate Commerce Commission Act, 49 U.S.C. § 14706, preempts state common law remedies against common carriers "where goods are damaged or lost in interstate commerce." REI Transp., Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697–98 (7th Cir.2008) (quoting Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1414 (7th Cir.1987)). The purpose of the Carmack Amendment is to "establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." Hughes, 829 F.2d at 1415. In relevant part, it states:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1). To establish a prima facie case under the Carmack Amendment, a shipper must demonstrate: (1) delivery of the shipment to the carrier in good condition; (2) loss or damage to the shipment; and (3) the amount of damages. Allied Tube & Conduit Corp. v. S. Pac. Transp. Co., 211 F.3d 367, 369 (7th Cir.2000).

Once a prima facie case is established, the burden of proof is upon the

carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. *Id.* at 369–70. The Supreme Court has enumerated the excepted causes as (a) acts of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. *Miss. Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964).

■ Kraze does not assert that Oshkosh Storage failed to deliver the cheese to Kraze in good condition. The central dispute between the parties is whether Kraze's premature removal of the seal caused "actual loss or injury" or "damage" to the delivered product. Oshkosh Storage asserts that the value of the cheese was $70,278.61 if it had arrived with a verified seal but that its value instantly decreased when the seal was broken. Oshkosh Storage President Carl Doemel testifies that his company's verification of an intact seal is part of the value of the load because customers demand this for assurance of product integrity. (Doemel Aff. ¶5, ECF No. 24.) In Oshkosh Storage's view, the reduction in value constitutes damage under the plain meaning of the term. Kraze counters that a broken seal is not *prima facie* evidence of damaged goods because it does not indicate whether the delivered goods were actually tampered with or harmed in any way. Kraze cites this Court's previous decision in *Land O'Lakes, Inc. v. Superior Serv. Transp of Wis., Inc.,* 500 F.Supp.2d 1150 (E.D.Wis.2007), a case arising under the Carmack Amendment in which the Court stated that "[a] seal is intended to protect the shipment from tampering, but its absence does not mean that the shipment is contaminated or otherwise damaged." *Id.* at 1154.

The Court concludes that Oshkosh Storage has the better argument. Although the Carmack Amendment does not explicitly define "actual loss or injury," a decrease in product value is unquestionably a loss or injury. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "loss" as "the disappearance or diminution of value" and "injury" as "any harm or damage"). The term "damage" is more or less synonymous with actual loss or injury and does not necessarily mean physical damage. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "damage" as "loss or injury to person or property"). Courts also frequently look to the fair market value of a product when calculating damages under the Carmack Amendment. *See, e.g., Gordon v. United Van Lines, Inc.,* 130 F.3d 282, 287–88 (7th Cir.1997). Here, it is undisputed that Dairiconcepts rejected the load solely because of the broken seal and that the cheese was later sold at a lower price. Kraze suggests that the broken seal did not cause the cheese to lose value and that Oshkosh Storage simply obtained a better price than Great West Casualty. Absent evidence that Great West sold the cheese at a discounted price for a particular reason, however, the Court presumes that Great West sold the cheese for its fair market value. Oshkosh Storage was therefore damaged in the amount of $19,278.61.

Kraze's reliance on *Land O'Lakes* is misplaced. In that case, this Court addressed whether a shipper had delivered a shipment to a carrier in good condition. Shipper Madison Dairy (a Land O' Lakes plant) had delivered a shipment of butter to carrier Runabout, but then Runabout's truck crashed en route to its final destination. *Land O'Lakes,* 500 F.Supp.2d at 1153. Runabout claimed that because the Madison Dairy employee in charge of loading the butter onto Runabout's truck had

failed to seal the load, the shipment was worthless as soon as it left Madison Dairy's facility. *Id.* at 1155. Madison Dairy's policy required that all shipments leaving or arriving at its facilities be sealed or else be "subject to refusal." *Id.* In this context, the Court held:

> Under the Carmack Amendment, the shipper is required to establish that the shipment was delivered to the carrier is [sic] good condition; not that the load was sealed. A seal is intended to protect the shipment from tampering, but its absence does not mean that the shipment is contaminated or otherwise damaged.

*Id.* at 1156. In effect, the Court rejected Runabout's argument that a broken seal makes a shipment of food goods worthless as a matter of law. Although the Court's language was broad, the Court was addressing a particular factual scenario and did not hold a broken seal could *never* constitute damage to goods under the first or second prong. Whether a broken seal constitutes damage will often depend on the actions of the end customer. Food products transported with a broken seal are not necessarily worthless and they may be accepted by a customer who is willing to perform an inspection or other quality control check to ensure the quality of the goods. In *Land O'Lakes*, the goods were damaged en route and never reached their final destination. Thus, unlike this case, the shipment was not rejected because of an absent or broken seal and there was no evidence the shipment would have been rejected had it not been for the accident. Here, by contrast, Oshkosh Storage incurred an injury because Kraze's failure to deliver a sealed load caused the customer to reject the product.

Kraze asserts that it is unreasonable to reject a load of perfectly good cheese solely because of a broken seal.

But this argument ignores the purpose of the seal and the requirements of Oshkosh Storage's customer Dairiconcepts. Food distributors have a duty to ensure that the food they provide to the public is safe, and the requirement that shipments be unsealed only by authorized personnel is intended to provide assurance that the shipment has not been contaminated. Given the risk to customers and a distributor's own potential liability, it is not unreasonable for a company to adopt a policy of rejecting shipments of food products when the seal has been broken as long as that policy has been clearly announced. For these reasons and based on the undisputed facts, the Court concludes that Oshkosh Storage has established a *prima facie* case under the Carmack Amendment. The burden of proof then shifts to Kraze to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. While Kraze argues that a broken seal does not constitute damage as a matter of law, it does not contend that it was not negligent. In defense of Daniels' actions, Kraze offers only that Daniels "broke the seal in order to open the trailer doors and back into the bay." (Def.'s Combined Reply Br. at 8 n. 1, ECF No. 32.) But this explanation does not justify Daniels' failure to follow the rules on the instruction sheet and signs which instruct that only an Oshkosh Storage employee should break the seal. Oshkosh Storage asserts that verifying unbroken seals is industry practice (Doemel Aff. ¶ 8), and Kraze has offered no evidence to the contrary. Based on the evidence in the record, no reasonable jury could find that Kraze was free from negligence.

Kraze's additional arguments are unavailing. Kraze argues that its liability under the Carmack Amendment was extinguished as a matter of law as soon as it arrived at Oshkosh Storage's facility.

Kraze cites *Sec'y of Agric. v. United States*, 347 U.S. 645, 647, 74 S.Ct. 826, 98 L.Ed. 1015 (1954) for the proposition that "it is the responsibility of the carrier ... to 'deliver' the goods by placing them in such a position as to make them accessible to the consignee." *See also Intech, Inc. v. Consol. Freightways, Inc.*, 836 F.2d 672, 674 (1st Cir.1987) ("Generally, the spotting of a shipment at the consignee's place of business constitutes delivery regardless of whether the consignee has accepted or rejected the goods."). The rule is intended to distinguish between delivery, which is the responsibility of the carrier, and unloading, which is typically the responsibility of the consignee. *Sec'y of Agric.*, 347 U.S. at 647, 74 S.Ct. 826. Oshkosh Storage questions whether this rule should apply in the case of a truck shipment as opposed to a railroad shipment, the factual scenario presented in *Secretary of Agriculture*. But even if the rule applies here, it is undisputed that Daniels broke the seal before he backed his truck into the loading dock. Thus, the damage occurred before Kraze made the products accessible for unloading.

 Kraze also asserts that the Carmack Amendment does not cover the broken seal because the bill of lading did not explicitly require that the seal be broken by the consignee. Kraze cites 49 U.S.C. § 14101(b), which allows a shipper and carrier to expressly waive liability under the Carmack Amendment. Kraze characterizes Oshkosh Storage's seal verification rule as an "additional non-Carmack requirement" which must be in writing. The cited statute simply does not reach as far as Kraze contends; it requires a waiver to be in writing, but it does not require the shipper to exhaustively list all driver instructions or all foreseeable events that may cause damage to the product. In addition, even absent any written instruction, it should have been evident to Daniels that it was Oshkosh Storage's responsibility to break the seal. If the carrier breaks the seal, the seal's purpose is defeated because the consignee cannot verify that the goods have not been accessed or tampered with during delivery.

 Finally, Kraze argues that Oshkosh Storage's delivery documents serve as an admission that the cheese was not delivered in a damaged condition. On the "Inbound/Outbound Transport Inspection Report" dated April 3, 2013, warehouse employee John Schaetz marked "Accept Load" and checked a box indicating that there was no evidence of damage to the cheese. (ECF No. 20–1 at 12.) Schaetz contends that he accepted the load in error and had not received approval from Tessy Jensen to accept the load. (Second Schaetz Aff. ¶¶ 4–5, ECF No. 34.) Regardless of whether Schaetz believed the load was "damaged," it is undisputed that Oshkosh Storage rejected the load after speaking with Dairiconcepts. Schaetz was not offering a legal opinion on behalf of Oshkosh Storage when he completed the inspection report, and the report does not constitute an admission that the cheese was not "damaged" for purposes of the Carmack Amendment.

## III. Conclusion

For the reasons stated above, Kraze's motion for summary judgment (ECF No. 20) is hereby DENIED and Oshkosh Storage's cross-motion for summary judgment (ECF No. 21) is hereby GRANTED. The Clerk is directed to enter judgment for Oshkosh Storage against Kraze in the amount of $19,278.61, together with statutory costs. Kraze's unopposed motion to extend the discovery schedule (ECF No. 35) is denied as moot.